IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY, | § | |
| ALLSTATE INDEMNITY COMPANY, | § | |
| ALLSTATE PROPERTY & CASUALTY | § | |
| INSURANCE COMPANY, ALLSTATE | § | |
| COUNTY MUTUAL INSURANCE | § | |
| COMPANY, and ALLSTATE FIRE & | § | |
| CASUALTY INSURANCE COMPANY, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| WILLIAM F. DONOVAN, M.D., | § | CIVIL ACTION NO. H-12-0432 |
| LORENZO FAROLAN, M.D., OMAR | § | |
| VIDAL, M.D., DAVID DENT, D.O., | § | |
| NORTHSHORE ORTHOPEDICS | § | |
| ASSOCIATION, JOHN TALAMAS, | § | |
| QUALITY DRILL MEDIA, L.L.C., | § | |
| MEMORIAL MRI & DIAGNOSTIC | § | |
| CENTER, L.P. (f/n/a MEMORIAL | § | |
| MRI & DIAGNOSTIC CENTER, | § | |
| L.L.L.P.), MICHAEL HILLIARD, | § | |
| SHAILESH PATEL, and KIM TRAN, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Allstate Insurance Company, Allstate Indemnity
Company, Allstate Property & Casualty Insurance Company, Allstate
County Mutual Insurance Company, and Allstate Fire & Casualty
Insurance Company, bring this action against defendants, William F.
Donovan, M.D., Lorenzo Farolan, M.D., Omar Vidal, M.D., David Dent,
D.O., Northshore Orthopedics Association, John Talamas, Quality
Drill Media, L.L.C., Memorial MRI & Diagnostic Center, L.P. (f/n/a

Memorial MRI & Diagnostic Center, L.L.L.P.) ("Memorial MRI"),
Michael Hilliard, Shailesh Patel, and Kim Tran, for operating a
Racketeer Influenced and Corrupt Organizations Act (RICO)
enterprise in violation of 18 U.S.C. § 1962(c), engaging in a RICO
conspiracy in violation of 18 U.S.C. § 1962(d), and for fraud,
conspiracy, and unjust enrichment in violation of Texas common law.
Pending before the court are the following motions: (1) Motion to
Dismiss or, in the Alternative, Motion for a More Definite
Statement and Request for an Order Requiring a RICO Case Statement
on Behalf of Defendants Memorial MRI, Shailesh Patel, Michael
Hilliard, and Kim Tran (Docket Entry No. 20); Defendants William F.
Donovan, M.D. and Northshore Orthopedics Assoc.'s Preliminary
Motions to Dismiss Pursuant to Rules 12(b)(6) and 9(b), and
Alternative Motion to Dismiss State Law Claims Pursuant to 28
U.S.C. § 1367(c) ("Donovan's and Northshore's Motions to Dismiss")
(Docket Entry No. 21); Defendants William F. Donovan, M.D. and
Northshore Orthopedics Assoc.'s Motion for More Definite Statement
Pursuant to Rule 12(e) (Docket Entry No. 22); Defendants John
Talamas and Quality Drill Media, L.L.C.'s Motion to Dismiss
Pursuant to Rules 12(b)(6) and 9(b) (Docket Entry No. 27);
Defendant Lorenzo Farolan's Motion to Dismiss Pursuant to
Rules 12(b)(6) and 9(b) ("Farolan's Motion to Dismiss") (Docket
Entry No. 31); Defendant Omar Vidal, M.D.'s Motion for More
Definite Statement Pursuant to Rule 12(e) (Docket Entry No. 32);

-2-

Defendant Omar Vidal, M.D.'s Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b), and Alternative Motion to Dismiss State Law Claims Pursuant to 28 U.S.C. § 1367(c) (Docket Entry No. 33); and Defendant David Dent, D.O.'s Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b), and Alternative Motion to Dismiss State Law Claims Pursuant to 28 U.S.C. § 1367(c) (Docket Entry No. 34). Plaintiffs have responded to the pending motions by arguing that their pleadings are sufficient to survive the motions to dismiss and by seeking leave to amend their complaint if the court disagrees.   For the reasons explained below, the defendants' motions to dismiss pursuant to Rules 9(b) and 12(b)(6) will be granted, defendants' motions to dismiss plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(c) will be denied, defendants' motions for more definite statement and/or request for RICO case statement will be granted, plaintiffs' request to file an amended complaint will be granted, and plaintiffs will be ordered to file an amended complaint within twenty (20) days that includes a statement of facts sufficient to support civil RICO claims and to satisfy Rule 9(b)'s requirement to plead fraud with particularity.

## I.  **Factual Allegations**

Plaintiffs have filed suit against defendants seeking

to recover sums fraudulently procured by Defendants from Plaintiffs from 2005 through 2010, by means of bodily injury claims based on medical billings for unnecessary and unreasonable examinations and consultations, diagnostic testing, surgical injection procedures, as

well as recommendations of supposed need for future
surgical procedures.[1]

Plaintiffs allege that

> Defendants converted otherwise "soft-tissue" bodily
> injury claims into major medical claims, through inter-
> enterprise referrals. Generally, patients were referred
> to Memorial MRI for MRIs. These MRIs were evaluated by
> a specified radiologist, with embellished findings. The
> patients were then referred to Northshore Orthopedics.
> From Northshore Orthopedics, patients were generally
> referred or neurodiagnostic testing, additional MRIs,
> surgical injection procedures (including epidural steroid
> injections), and additional orthopedic consultations.
> These procedures and consultations were performed at the
> facilities of Memorial MRI and Northshore Orthopedics.
> Generally, a report or reports were issued opining the
> patient is a candidate for future surgery.[2]

Plaintiffs allege that

> [u]pon the completion of the above-referenced referrals,
> Northshore Orthopedics and Memorial MRI forwarded medical
> records and billings to the Stern Miller & Higdon law
> firm and to the Law Office of Joseph Stang. . . .

> Defendants provided these records to the law
> offices, knowing the documents would be included in
> demand packages forwarded to Allstate. Defendants
> understood the records would inflate the "value" of the
> claimants patient's claim.

> The law offices then prepare demand letters. The
> law offices enclose the demand letters, clinic records,
> reports, and bills into demand packages, and forward
> these to Plaintiffs by U.S. Mail, for the purpose of
> executing the scheme, in violation of 18 U.S.C. § 1[3]41.

>                          . . .

> The records, reports, billings, and letters do not
> disclose material facts, such as there is a relationship

---

[1]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 2 ¶ 1.

[2]Id. at 2 ¶ 2.

between Northshore Orthopedic, Memorial MRI, Quality
Drill Media, the physicians, and the law offices. . . .

Allstate issued checks in settlement of the
claims.  These checks were forwarded to the law offices
by U.S. Mail.[3]

## II.  Motions to Dismiss

Defendants move the court to dismiss the plaintiffs' claims

pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure

to state a claim for which relief may be granted and 9(b) for

failure to plead fraud with particularity.

### A.   Standards of Review

#### 1.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) for failure to

state a claim for which relief may be granted tests the formal

sufficiency of the pleadings and is "appropriate when a defendant

attacks the complaint because it fails to state a legally

cognizable claim." Ramming v. United States, 281 F.3d 158, 161

(5th Cir. 2001), cert. denied sub nom Cloud v. United States,

122 S.Ct. 2665 (2002).  The court must accept the factual

allegations of the complaint as true, view them in a light most

favorable to the plaintiff, and draw all reasonable inferences in

the plaintiff's favor.  Id.

When a federal court reviews the sufficiency of a
complaint, before the reception of any evidence either by

---

[3]Id. at 18-19 ¶¶ 79-81, 83-84.

> affidavit or admissions, its task is necessarily a
> limited one.  The issue is not whether a plaintiff will
> ultimately prevail but whether the claimant is entitled
> to offer evidence to support the claims.

Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 997 (2002).  To avoid

dismissal a plaintiff must allege "enough facts to state a claim to

relief that is plausible on its face."  Bell Atlantic Corp. v.

Twombly, 127 S.Ct. 1955, 1974 (2007).  Plausibility requires "more

than an unadorned, the-defendant-unlawfully-harmed-me accusation."

Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  A claim has facial

plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged.  Id.  The plausibility standard

is not akin to a "probability requirement," but asks for more than

a sheer possibility a defendant acted unlawfully.  Id.  "Dismissal

is proper if the complaint lacks an allegation regarding a required

element necessary to obtain relief."  Torch Liquidating Trust

ex rel. Bridge Associates L.L.C. v. Stockstill, 561 F.3d 377, 384

(5th Cir. 2009).

### 2.  Federal Rule of Civil Procedure 9(b)

A motion to dismiss pursuant to Fed. R. Civ. P. 9(b), which

provides that "[i]n alleging fraud or mistake, a party must state

with particularity the circumstances constituting fraud or

mistake," tests the factual sufficiency of the plaintiffs'

allegations.  See Tel-Phonic Services, Inc. v. TBS International,

Inc., 975 F.2d 1134, 1138 (5th Cir. 1992) (citing Landry v. Air

Line Pilots Association International AFL-CIO, 901 F.2d 404, 430 (5th Cir.), cert. denied, 111 S.Ct. 244 (1990) (Rule 9(b)'s particularity requirement applies to the pleading of mail fraud as a predicate act in a RICO case.)).   Pleading fraud with particularity in this circuit requires "[a]t a minimum . . . the particulars of time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Id. at 1139.  The Fifth Circuit has explained,

> [i]n cases of fraud, Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later.  We apply Rule 9(b) to fraud complaints with "bite" and "without apology," but also aware that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading. Rule 9(b) does not 'reflect a subscription to fact pleading' and requires only "simple, concise, and direct" allegations of the "circumstances constituting fraud," which after Twombly must make relief plausible, not merely conceivable, when taken as true.

United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 186 (5th Cir. 2009) (citing Twombly, 127 S.Ct. at 1955).  "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

## B.   Analysis

Plaintiffs bring this action for violations of 18 U.S.C. §§ 1962(c) and (d) (the RICO statute), common law fraud, conspiracy, and unjust enrichment.  Plaintiffs' claims are based on allegations that "[d]efendants engaged in a scheme to defraud

[plaintiffs], through bodily injury claims based on medical billings for unnecessary and unreasonable examinations and consultations, diagnostic testing, surgical injection procedures, as well as recommendations of supposed need for future surgical procedures."[4]

1.   RICO Claims

RICO provides civil causes of action for recovery of treble damages for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c).  Plaintiffs have alleged that defendants have violated §§ 1962(c) and (d).  These subsections state:

> (c)   It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d)   It shall be unlawful for any person to conspire to violate any of the provisions of subsection . . . (c) of this section.

18 U.S.C. §§ 1962(c) and (d).  The Fifth Circuit has interpreted these subsections to mean that "a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity[, and that] a person cannot conspire to violate subsection[] . . . (c)."

---

[4]Response to Defendants Donovan's and Northshore Orthopedic's Motions to Dismiss, Docket Entry No. 36, p. 1 ¶ 1.

St. Paul Mercury Insurance Co. v. Williamson, 224 F.3d 425, 439
(5th Cir. 2000).  To state a prima facie claim pursuant to any RICO
subsection, plaintiffs must allege facts capable of establishing
"(1) a *person* who engages in (2) a *pattern of racketeering activity*
(3) connected to the acquisition, establishment, conduct, or
control of an *enterprise.*"  Id. (quoting Delta Truck & Tractor,
Inc. v. J.I. Case Co., 855 F.2d 241, 242 (5th Cir. 1988), cert.
denied, 109 S.Ct. 1531 (1989)).  See also St. Germain v. Howard,
556 F.3d 261, 263 (5th Cir.), cert. denied, 129 S.Ct. 2835 (2009).
Defendants argue that plaintiffs' RICO claims should be dismissed
because plaintiffs have not alleged facts capable of establishing
(1) a pattern of racketeering activity, (2) a RICO enterprise,
and/or (3) a RICO conspiracy.

(a)  Pattern of Racketeering Is Not Sufficiently Alleged
       Defendants argue that plaintiffs' RICO claims fail as a matter
of law because plaintiffs have not sufficiently alleged that
defendants engaged in a pattern of racketeering activity and have
failed to plead fraud with particularity.   "A pattern of
racketeering activity consists of two or more predicate criminal
acts that are (1) related and (2) amount to or pose a threat of
continued criminal activity."  St. Germain, 556 F.3d at 263.  See
also 18 U.S.C. § 1961(5) ("'pattern of racketeering activity'
requires at least two acts of racketeering activity, one of which
occurred after the effective date of this chapter and the last of

-9-

which occurred within ten years . . . after the commission of a prior act of racketeering activity"). Predicate acts can be either state or federal crimes.  Id.

Plaintiffs allege that defendants engaged in acts of mail fraud in violation of 18 U.S.C. § 1841, which prohibits use of the mail to plan or conduct fraudulent schemes.  Plaintiffs' mail fraud allegations must be based on facts capable of establishing: "(1) a scheme to defraud by means of false or fraudulent representation, (2) interstate or intrastate use of the mails to execute the scheme, (3) the use of the mails by the defendant connected with [the] scheme, and (4) actual injury to the plaintiff."  In re Burzynski, 989 F.2d 733, 742 (5th Cir. 1993).  "[A]lthough reliance is not an element of statutory mail or wire fraud, [the Fifth Circuit has] required its showing when mail or wire fraud is alleged as a RICO predicate."  In re Mastercard International, Inc., 313 F.3d 257, 263 (5th Cir. 2002).  Plaintiffs' allegations of mail fraud must also satisfy Rule 9(b)'s requirement that fraud be pled with particularity.  See Tel-Phonic, 975 F.2d at 1138.

### (1)  Predicate Acts and Pattern of Racketeering Activity Are Not Sufficiently Alleged

Plaintiffs' complaint fails to allege that defendants engaged in predicate acts of mail fraud and asserts that defendants engaged in a pattern of racketeering activity in conclusory fashion:

> 103.  Defendants have knowingly conducted and/or participated, directly and indirectly, in the

-10-

conduct of the affairs of the above described
Enterprises through a "pattern of racketeering
activity" as defined by Title 18, United States
Code, Section 1961(5).

104.   Such racketeering activity consists of repeated
violations of the Federal mail fraud statute,
Title 18, United States Code, section 1341, based
upon the fraudulent, inflated claims made
regarding the supposed necessary treatment at
Northshore Orthopedics and Memorial MRI.

105.   These predicate acts were part of a scheme, and
were not isolated events.

106.   As a direct and proximate result of the
Defendants' conduct, Plaintiffs were injured by
paying sums in payment of fraudulent bodily injury
claims, arising from the pattern of racketeering
activity. This injury is set forth more fully in
paragraphs 130 through 132.[5]

The factual allegations underlying the plaintiffs' allegations of

predicate acts of mail fraud and pattern of racketeering activity

are vague and non-specific:

79.   . . . Northshore Orthopedics and Memorial MRI
**forwarded** medical records and billings to the
Stern Miller, & Higdon law firm and to the Law
Office of Joseph Stang. These records included
Dr. Donovan's "letters of medical necessity" in
regard to referrals, as well as the MRI,
neurodiagnostic, and 'second opinion' medical

---

[5]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 23
¶¶ 103-106. See also id. at 22 ¶ 98 ("The Center Enterprise
Persons are all employed by or associated with the Center
Enterprise, and conducted its affairs through a pattern of
racketeering activity. The Persons operated the Enterprise for the
purpose to inflate what would have otherwise been, at most, 'soft
tissue' automobile accident claims into apparent major injury
claims, through a 'build up' of the claim by unnecessary diagnostic
tests, surgical injection procedures, etc. This was accomplished
through repeated violations of Title 18, United States Code,
section 1341.").

consultation reports, etc.  These also included
records opining the patient would require surgery.

80.   Defendants  provided  these  records  to  the law
offices,  knowing  the  documents  would  be  included
in   demand   packages   **forwarded**   to   Allstate.
Defendants **understood** the records would inflate
the 'value' of the claimant patient's claim.

81.   The  law  offices  then  prepare  demand  letters.   The
law  offices  enclose  the  demand  letters,  clinic
records,  reports,  and  bills  into  demand  packages,
and  forward  these  to  Plaintiffs  by  U.S.  Mail,  for
the  purpose  of  executing  the  scheme,  in  violation
of 18 U.S.C. § 1[3]41.[6]

### (i)   Predicate  Acts  Are  Not  Sufficiently Alleged

Defendants argue that plaintiffs' complaint is insufficient to

allege  predicate  acts  of  mail  fraud  because  plaintiffs  fail  to

allege  facts  capable  of  establishing  how  any  defendant  used  the

United  States  Mail  to  further  the  alleged  scheme.   Plaintiffs

respond that

it is well established an accused causes a letter to be
delivered by mail if he does an act with knowledge that
the use of the mails will follow in the ordinary course
of business, or where he can reasonably foresee that use
of the mails will result, and it is not necessary to
prove the accused used the mails himself or actually
intended the mail be used.[7]

While plaintiffs do not need to establish that each defendant

used  the  mail  themselves,  plaintiffs  do  need  to  allege  facts

capable  of  establishing  that  the  mailings  at  issue  were  incident  to

---

[6]Id. at 18 ¶¶ 79-81 (emphasis added).

[7]Response to Defendants Donovan's and Northshore Orthopedic's
Motion to Dismiss, Docket Entry No. 36, p. 18 ¶ 38.

an essential part of the scheme, i.e., that completion of the alleged scheme depended in some way on use of the mails. <u>See United States v. Maze</u>, 94 S.Ct. 645, 648-51 (1974). <u>See also United States v. Trencer</u>, 107 F.3d 1120, 1126-27 n.1 (5th Cir.), <u>cert. denied</u>, 118 S.Ct. 390 (1997) (rejecting the government's argument that an innocent mailing supported the defendant's mail fraud conviction because the government "failed to offer any explanation as to how the [mailing] furthered the scheme to defraud"); <u>United States v. Ingles</u>, 445 F.3d 830, 835 (5th Cir. 2006) (holding that mail fraud statute did not embrace a defendant's plot to burn down his son's house, where the son, who was the insured party, had no knowledge of the plot and the father merely hoped for or expected a share of the insurance proceeds), and 838 (recognizing that "both innocent mailings (i.e., those that do not contain a misrepresentation) and mailings between innocent parties can support a mail fraud conviction," but explaining that "the mail fraud statute does not merely require that a scheme to defraud cause a mailing; it also requires that 'the mailing that is caused [be] a part of the execution of the fraud to [be] incident to an essential part of the scheme.'").

Plaintiffs have alleged that two non-party law firms mailed demand packages that included clinic records that allegedly sought payment for unnecessary medical testing and procedures, and that plaintiffs responded by sending checks to the non-party law firms. But plaintiffs have neither alleged that completion of the scheme

depended upon these mailings, nor have they alleged facts showing how or why the mailings furthered the scheme. Accordingly, plaintiffs' complaint fails to allege facts capable of establishing either that any defendant engaged in predicate acts of mail fraud, or that any defendant engaged in acts that caused use of the mails to further a fraudulent scheme.

### (ii) Pattern of Racketeering Activity Is Not Sufficiently Alleged

Defendants' argue that plaintiffs' complaint is insufficient to allege that defendants engaged in a pattern of racketeering activity because plaintiffs have not alleged facts capable of establishing that the alleged predicate acts are related and that they meet the requisite "continuity" needed to establish a pattern of racketeering activity. Citing H.J. Inc. v. Northwestern Bell Telephone Co., 109 S.Ct. 2893, 2902 (1989), plaintiffs respond that they have sufficiently alleged continuity because

> [t]he Complaint alleges the pattern of racketeering activity occurred in the period 2005 to 2010. [Doc. 1, ¶ 89]. The Complaint clearly alleges multiple acts of mail fraud in the period; for example, it alleges two law offices were involved in mailing the demand packages.[8]

Because RICO reaches only those unlawful activities that amount to or threaten long-term criminal activity, a RICO complaint must allege that "the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."

---

[8]Id. at 20 ¶ 44.

-14-

H.J., Inc., 109 S.Ct. at 2900.  The Supreme Court explained that "[c]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 2901.  The Supreme Court explained that "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." Id. at 2902.  In either case "continuity" is

> centrally a temporal concept . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time.  Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct.

Id.

Plaintiffs' conclusory assertion that the pattern of racketeering activity occurred in the period 2005 to 2010, unsupported by allegations of the dates on which any defendant engaged in a predicate act, is not capable of establishing that defendants engaged in predicate acts that shared a continuous relationship over a substantial period of time.  Accordingly, plaintiffs' complaint fails to allege facts capable of establishing that defendants engaged in predicate acts of mail fraud that plausibly constitute a pattern of racketeering activity because

they are related, *and* they continued for a substantial period of time such that they pose or amount to a threat of continued criminal activity. See Elliott v. Foufas, 867 F.2d 877, 882 (5th Cir. 1989) (finding plaintiff's allegations of mail and wire fraud insuffi-cient to support claim that defendants had engaged in a pattern of racketeering activity because plaintiff did "not identify the contents of any communications, nor [did] she explain how the communications advanced the alleged scheme of the defendants to defraud her[, and s]he [did] not suggest how the communications violated federal law.").

### (2)   Fraud Is Not Alleged With Particularity

Plaintiffs' complaint falls far short of meeting Rule 9(b)'s particularity requirement for pleading fraud. See Tel-Phonic, 975 F.2d at 1139 (pleading fraud with particularity requires "[a]t a minimum . . . the particulars of time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby"). Plaintiffs assert that their RICO claims are "based upon the fraudulent, inflated claims made regarding the supposed necessary treatment [automobile accident patients received] at Northshore Orthopedics and Memorial MRI."[9]  But instead of alleging the names of the patients about whom misrepresentations were made, plaintiffs

---

[9]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 23 ¶ 104.

allege only that the patients were clients of two non-party law firms;[10] instead of alleging specific misrepresentations regarding these patients, plaintiffs merely list eight general categories of fraudulent conduct;[11] instead of alleging which defendants made misrepresentations; plaintiffs state only that unidentified "clinic records"[12] contained misrepresentations, and instead of identifying specific mailings that contain misrepresentations, plaintiffs allege only that the unidentified "clinic records" at issue were included in demand packages that non-party law firms mailed to plaintiffs on unspecified dates.[13]

The conclusory, vague, and non-specific allegations contained in plaintiffs' complaint leave the defendants and the court left to wonder:   (1) which demand packages sent to plaintiffs contained fraudulent misrepresentations; (2) which documents within each such demand package contained fraudulent misrepresentations; (3) which statements within each such document were fraudulent misrepresentations; (4) what facts lead the plaintiffs to believe that any such statements are fraudulent misrepresentations; (5) when the fraudulent misrepresentations were made; (6) when

---

[10]Id. at 13-14 ¶¶ 57-59 and 18 ¶ 79-81.

[11]Id. ¶ 82.

[12]Id. (alleging that "[t]he clinic records, including the reports and bills, and the demand letters make misrepresentations concerning the patients. . .").

[13]Id. ¶¶ 79-81.

mailings containing fraudulent misrepresentations were made; and (7) when the defendants who ordered or provided the allegedly unnecessary medical tests and procedures received payment for those tests and procedures; and (8) what, exactly, each defendant gained by virtue of participating in the alleged fraud.

Although plaintiffs argue that their allegations of racketeering activity satisfy Rule 9(b)'s requirement that fraud be pled with particularity, plaintiffs have not cited any case that has allowed similarly conclusory, vague, non-specific allegations to survive a motion to dismiss. Pleadings in analogous cases that have survived motions to dismiss contain substantially more facts than plaintiffs' complaint. See, e.g., Beta Health Alliance MD PA v. Kelly Witherspoon LLP, Civil Action No. 3:09-CV-0399-BF, 2009 WL 2195882 (N.D. Tex. July 22, 2009) (defendants alleged to have engaged in mail and wire fraud for over five years by referring 34 patients for healthcare services for which defendants never intended to pay); Commercial Metals Co. v. Chazanow, Civil Action No. 3-09-CV-0808-B, 2009 WL 3853704 (N.D. Tex. November 17, 2009) (defendants alleged to have submitted fraudulent invoices for which plaintiffs made 618 payments totaling more than $3 million over a 32-month period); Larco Towing, Inc. v. Newpark Drilling Fluids, LLC, Civil Action Nos. 09-2928, 09-2929, 09-3534, 2010 WL 1416550 (E.D. La. March 31, 2010) (defendants alleged to have fraudulently over-billed plaintiffs more than 200 times during a six-year period for an amount in excess of $1.5 million).

Instead, citing Cadle Co. v. Schultz, 779 F.Supp. 392 (N.D.
Tex. 1991), plaintiffs argue that "certain information surrounding
Allstate's allegations is peculiarly within the Defendants'
knowledge, and therefore less detail is required in the
complaint."[14]  In Cadle, 779 F.Supp. at 396, the court recognized
that "if the information surrounding the allegations is peculiarly
within the knowledge of the defendant, less detail is required in
the complaint."  Plaintiffs explain that information peculiarly
within the defendants' knowledge includes

> the dates and circumstances of the transmittal of records
> and information from Northshore and Memorial MRI to the
> law offices by Defendant Talamas or through other means.
> These also include the financial transactions and manner
> of transfer of funds between Defendants, and between
> Defendants and the relevant law offices, including the
> sums the Donovan Defendants received in regard to the
> patients the subject of Allstate's damages claim.[15]

However, plaintiffs fail to explain why, absent these limited
categories of information, they are unable to satisfy Rule 9(b)'s
requirement to plead predicate acts of mail fraud with
particularity.  Because plaintiffs' complaint fails to allege facts
capable of establishing that defendants engaged in predicate acts
of mail fraud, fails to allege that any predicate acts are
sufficiently related and continuous to constitute a pattern of
racketeering activity, and fails to allege predicate acts with

---

[14]Response to Defendants Donovan's and Northshore Orthopedic's
Motions to Dismiss, Docket Entry No. 36, p. 23 ¶ 51.

[15]Id. at 23-24 ¶ 51.

particularity as required by Rule 9(b), plaintiffs' RICO claims are subject to dismissal for failure to state a claim for which relief may be granted.

>     (b)   Entity Enterprise Is Sufficiently Alleged, But
>           Association-in-Fact Enterprise Is Not Sufficiently
>           Alleged

Defendants argue that plaintiffs' RICO claims fail as a matter of law because plaintiffs have not pled facts showing the existence of a RICO enterprise.   For purposes of civil RICO liability, "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity."  See 18 U.S.C. § 1961(4).  Thus, a RICO enterprise can be either a legal entity or an association-in-fact.   In re Burzynski, 989 F.2d at 743.  Regardless of whether the enterprise is alleged to be a legal entity or an association-in-fact, "[t]he 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of [racketeering] activity in which it engages." United States v. Turkette, 101 S.Ct. 2525, 2529 (1981).[16] See also Elliott, 867 F.2d at 881 ("The enterprise must be an entity separate and apart from the pattern of activity in which it engages.").  "The defendant who commits the predicate offenses must

---

[16]Although Turkette involved a criminal prosecution instead of a civil suit, the substantive requirements of § 1962(c) are the same, and the Fifth Circuit has recognized the appropriateness of relying on criminal RICO precedent for analyzing civil RICO liability.  See St. Paul Mercury Ins., 224 F.3d at 446 n.15.

also be distinct from the enterprise." <u>Elliott</u>, 867 F.2d at 881. To avoid dismissal for failure to state a claim, plaintiffs must plead specific facts, not mere conclusory allegations, capable of establishing the existence of an enterprise.  <u>Id.</u>

Plaintiffs allege both an entity enterprise consisting of Memorial MRI & Diagnostic Center, L.P.,[17] and an association-in-fact enterprise consisting of Northshore Orthopedic and Memorial MRI & Diagnostic Center, L.P.[18]  Plaintiffs allege that both enterprises shared a common purpose "to illicitly and illegally enrich the Defendants at the expense of Plaintiffs and their policyholders . . . [through pursuit of a] scheme . . . to create and pursue fraudulently inflated bodily injury claims,"[19] that both enterprises engaged in "repeated violations of the Federal mail fraud statute,"[20] and that plaintiffs "were injured by paying . . . fraudulent bodily injury claims."[21]

### (1)  Entity Enterprise Is Sufficiently Alleged

"A legal entity is one that 'has sufficient existence in legal contemplation that it can function legally, be sued or sue and make

---

[17]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 22 ¶¶ 96-98.

[18]<u>Id.</u> at 19 ¶ 86.

[19]<u>Id.</u> ¶¶ 101-102.

[20]<u>Id.</u> ¶ 104.

[21]<u>Id.</u> ¶ 106.

decisions through agents as in the case of corporations." Bonner
v. Henderson, 147 F.3d 457, 459 (5th Cir. 1998).  Plaintiffs allege
that

> Memorial MRI & Diagnostic Center, L.P. (f/n/a Memorial
> MRI & Diagnostic Center, L.L.L.P.) is an "enterprise" as
> that term is defined in 18 U.S.C. 1961(4) [and] is
> hereinafter referred to as "the Center Enterprise."
> Defendants Donovan, Farolan, Vidal, Dent, D.O.,
> Northshore Orthopedics Assoc., Talamas, Quality Drill
> Media, Memorial MRI & Diagnostic L.L.C., Hilliard, Patel,
> and Tran are all "persons" within the meaning of 18
> U.S.C. § 1961(3).[22]

Because plaintiffs have also alleged that Memorial MRI & Diagnostic
Center, L.P. is a Texas limited partnership, plaintiffs have
alleged that Memorial MRI is a legal entity and as such Memorial
MRI satisfies the statutory definition of an entity enterprise.
See 18 U.S.C. § 1961(4); Bonner, 147 F.3d at 459.  See also
United States v. Griffin, 660 F.2d 996, 999 (4th Cir. 1981), cert.
denied, 102 S.Ct. 1029 (1982) ("proof simply of the 'legal'
existence of the corporation, partnership, or other legal form of
organization charged" is presumably sufficient to prove existence
of legal entity enterprise).

### (2)   Association-in-Fact   Enterprise   Is   Not Sufficiently Alleged

"An 'association-in-fact' enterprise (1) must have an
existence separate and apart from the pattern of racketeering,
(2) must be an ongoing organization and (3) its members must

---

[22]Id. at 22 ¶ 96.

function as a continuing unit as shown by a hierarchical or consensual, decision-making structure." Delta Truck, 855 F.2d at 243 (citing Turkette, 101 S.Ct. at 2528-29). See also Boyle v. United States, 129 S.Ct. 2237, 2244 (2009) (recognizing that "an association-in-fact enterprise must have at least three structural features: purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose").

In support of their contention that Northshore Orthopedic and Memorial MRI constitute an association-in-fact enterprise that engaged in "repeated violations of the Federal mail fraud statute, Title 18, United States Code, section 1341,"[23] plaintiffs allege:

89. The Enterprise functioned as a continuing unit over the course of four to five years.

90. The Enterprise has an identifiable structure, with each person fulfilling a specific role to carry out and facilitate its purpose.

91. Defendants Donovan and Northshore Orthopedics have established, financed, owned, operated, and/or participated in the management of the "Northshore Orthopedics" medical office. This includes:

   a. Recruitment of orthopedic surgeons and diagnostic physicians (such as Drs. Vaughan, Rodriguez, and Kahkeshani) to perform services at Northshore Orthopedics;

   b. Assistance in the preparation of reports of orthopedic surgeons and diagnostic physicians (such as Drs. Vaughan, Rodriguez, and Kahkeshani);

_____

[23]Id. at 23 ¶ 104.

c.   Payment of orthopedic surgeons and diagnostic physicians (such as Drs. Vaughan, Rodriguez, and Kahkeshani) for services performed by the physicians on the premises of Northshore Orthopedics;

d.   Referrals of patients to Memorial MRI for diagnostic testing and surgical injection procedures, including patients for which the referrals are unnecessary.

92.   Defendants Memorial MRI & Diagnostics L.L.C., Memorial MRI & Diagnostic Center, L.P., Hilliard, Patel, Tran, Talamas, and Quality Drill Media, have established, financed, owned, operated, and/or participated in the management of the "Memorial MRI & Diagnostic" facilities.   This includes:

a.   Recruitment   of   physicians   (such   as Drs. Clayton, Farolan, Vidal, and Dent) to perform services at the facilities, or to evaluate testing conducted at the facilities;

b.   Assistance in the preparation of reports of these physicians;

c.   Payment to these physicians.

93.   Defendants Farolan, Vidal, and Dent operated and/or participated in the management of the "Memorial MRI & Diagnostic" facilities.   This includes:

a.   Evaluation of diagnostic testing, such as MRIs, conducted at the facilities;

b.   Conducting procedures, such as ESIs, at the facilities; and

c.   Allowing the facilities to bill the services they provide.

94.   The Enterprise engages in, and its activities affect, interstate commerce.

95.   The Defendants have been employed by and/or associated with the Enterprise, have participated

in the management and operation of the Enterprise,
and deliberately caused a fraud to be perpetrated
upon Plaintiffs and other automobile insurers.[24]

Defendants argue that plaintiffs' allegations that Memorial
MRI and Northshore Orthopedics constitute an association-in-fact
enterprise are insufficient because plaintiffs have failed to
allege facts capable of establishing that the alleged association-
in-fact enterprise "(a) has any separate existence for any purpose
other than the claimed purpose to commit the imaginary predicate
offenses; (b) is an ongoing organization; or (c) functions as a
continuing unit as shown by a hierarchical or consensual decision-
making structure."[25]

### (i)   Separate Purpose Is Not Sufficiently Pled

Citing State Farm Mutual Automobile Insurance Co. v. Giventer,
212 F.Supp.2d 639 (N.D. Tex. 2002), defendants argue that
plaintiffs' complaint

fails to plead specific facts showing that the Purported
Association-in-Fact [enterprise] had any existence or
purpose separate [and apart] from the alleged purpose to
commit the claimed predicate acts of fraud. . . Instead,
Allstate makes conclusory allegations concerning an
alleged separate purpose, and its only factual
allegations suggest that Defendants engaged in their
normal course of their respective and separate

_____

[24]Id. at 20-21 ¶¶ 89-95.

[25]Donovan's and Northshore's Motion to Dismiss, Docket Entry
No. 21, p. 7 ¶ 16.  See also Farolan's Motion to Dismiss, Docket
Entry No. 31, pp. 7-9 ¶¶ 12-15.  All the pending motions to dismiss
assert similar arguments; the court' failure to cite each motion
individually should not be taken to mean otherwise.

businesses. . . At most, Allstate accuses Defendants of
the purported "crime" of having a working relationship
with other healthcare providers to give their patients
the health services they need. . . This is simply not
sufficient pleading to show a separate existence or
purpose of the Purported Association-in-Fact
Enterprise.[26]

In <u>Giventer</u> the plaintiffs alleged that defendants owned,
operated and/or controlled law office and chiropractic clinics
through which they submitted fraudulent insurance claims arising
from intentionally caused automobile accidents.   The association-
in-fact enterprise was alleged to be a combination of law offices
and chiropractic clinics.   The court held that the law offices and
chiropractic clinics shared a common purpose of defrauding
insurance companies, but held that the plaintiffs failed to
establish

the existence of an ascertainable structure separate and
apart from the alleged pattern of racketeering.   In other
words, there is no evidence that the association of law
offices and chiropractic clinics existed separate and
apart from the alleged pattern of racketeering.   Aside
from the commission of the alleged predicate acts, there
appears to be nothing which binds the association
together.   As such, State Farm has failed to show
continuity — that the [] Enterprise existed for any
purpose other than to commit the predicate offenses.

<u>Giventer</u>, 212 F.Supp.2d at 650.

Plaintiffs respond that defendants' reliance on <u>Giventer</u> is
misplaced because that case

_____

[26]Donovan's and Northshore's Motion to Dismiss, Docket Entry
No. 21, pp. 7-8 ¶ 17.  <u>See also</u> Farolan's Motion to Dismiss, Docket
Entry No. 31, p. 8 ¶ 13.

concerned claims in which "cappers" recruited persons to
deliberately cause collisions, then took these recruits
to participating clinics and law officers opened for the
purpose of presenting the fraudulent claims.  The Court
found virtually all the clinics' patients were such
recruits. . . In other words, the clinic/law office
combination did not provide services to any **legitimate**
patients.  In contrast, Allstate's Complaint alleges the
association-in-fact enterprise of Northshore and Memorial
MRI predated the period at issue, and continues to treat
other patients, such as worker's compensation and other
work injury patients.[27]

Plaintiffs' complaint alleges that the association-in-fact

enterprise consisting of Northshore and Memorial MRI

> predates the pattern of racketeering activity alleged
> . . . [because] Northshore Orthopedic and Memorial MRI &
> Diagnostic Center, L.P. . . . associated prior to the
> period at issue in this lawsuit, in regard to referrals
> of Northshore Orthopedics patients to Memorial MRI
> facilities for diagnostic testing, procedures, etc.[, and
> t]hroughout the period at issue, Northshore Orthopedics
> continued to refer automobile accident patients not at
> issue, as well as other patients, to Memorial MRI for
> testing and procedures conducted or evaluated by, among
> others, Drs. Clayton, Farolan, Vidal, and Dent.[28]

Because these allegations are not capable of establishing that the

enterprise treats other, legitimate, patients, i.e., patients whose

claims are not fraudulently inflated, plaintiffs' allegations are

not capable of establishing that the association-in-fact enterprise

exists for a purpose other than the claimed purpose of "engag[ing]

in a scheme to defraud [insurance companies], through bodily injury

claims based on medical billings for unnecessary and unreasonable

---

[27]Response to Defendant Lorenzo Farolan's Motion to Dismiss,
Docket Entry No. 41, pp. 15-16 ¶ 34 (emphasis added).

[28]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 20
¶ 88.

examinations and consultations, diagnostic testing, surgical injection procedures, as well as recommendations of supposed need for future surgical procedures."[29]

> (ii) <u>Ongoing Organization and Function as a Continuing Unit Are Not Sufficiently Pled</u>

Defendants argue that plaintiffs' complaint

> does not plead specific facts showing that the Purported Association-in-Fact Enterprise is on ongoing organization or that it functions as a continuing unit as shown by a hierarchical or consensual decision-making structure. . . [A]t best, Allstate identified the specific roles Defendants played in providing healthcare services to their injured patients and running their respective businesses. . . .[A] description of each Defendant's separate business affairs does not show the existence of an ascertainable structure of an ongoing organization and, particularly any "decision-making structure."[30]

Plaintiffs respond that pursuant to the Supreme Court's decision in <u>Boyle</u>, 129 S.Ct. at 2237, "an enterprise 'need not have an ascertainable structure beyond that inherent in the pattern of racketeering activity in which it engaged."[31]  Citing ¶¶ 11-24 and 89-93 of their complaint, plaintiffs argue that

> Defendants' contention that Allstate merely pleads "the specific roles Defendants played in providing healthcare services to their injured patients and running their respective businesses" is incorrect.  Defendants ignore

---

[29]Response to Defendants Donovan's and Northshore Orthopedic's Motions to Dismiss, Docket Entry No. 36, p. 1 ¶ 1.

[30]Donovan's and Northshore's Motion to Dismiss, Docket Entry No. 21, p. 8 ¶ 18.

[31]Response to Defendants Donovan's and Northshore Orthopedic's Motions to Dismiss, Docket Entry No. 36, p. 15 ¶ 32.

allegations of the Complaint set forth in paragraphs 11
through 24 herein above.   Defendants also ignore the
actual allegations of the Defendants' roles in the
association in fact enterprise set forth in the Complaint
[Doc 1, ¶¶ 89-93].[32]

Plaintiffs seem to contend that because their "Complaint alleges

the combination and coordination of the various Defendants, through

referrals within the enterprise, [and] coordination with the

cooperative law offices, etc.,"[33] their allegations are capable of

establishing that the alleged enterprise was or is an ongoing

organization whose members function or functioned as a continuing

unit.   Plaintiffs argue that the defendants

simply ignore the actual allegations of the Complaint.
For example, in regard to Donovan and Northshore, the
Complaint alleges they send patients for various
unnecessary tests, consultations, and procedures,
including MRIs and surgical injection procedures at
Memorial MRI.   (Doc 1, ¶¶ 70, 74, 82, 98, 104).   Donovan
referred Dr. Vidal to Memorial MRI, where Vidal
negotiated with other Defendants, and it was agreed that
Vidal would be paid for the injection procedures he
performed by another Defendant, Quality Drill Media.
(Doc 1, ¶ 44).   Talamas also acts as a liaison between
Memorial MRI and Northshore Orthopedic, and between
Memorial MRI and the law firm of Stern, Miller & Higdon.
(Doc 1, ¶ 37).[34]

In Boyle the Supreme Court was asked "to decide[] whether an

association-in-fact enterprise under [RICO] must have 'an

ascertainable structure beyond that inherent in the pattern of

racketeering activity in which it engages.'"   Boyle, 129 S.Ct. at

---

[32]Id. at 16 ¶ 34.

[33]Id. at 14 ¶ 31.

[34]Id. at 16-17 ¶ 35.

2241.   In analyzing this issue the Court recognized that in Turkette, 101 S.Ct. at 2524, the Court stated that an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit," Boyle, 129 S.Ct. at 2243 (quoting Turkette, 101 S.Ct. at 2528), while a pattern of racketeering activity is "proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise," Turkette, 101 S.Ct. at 2529, and that "[w]hile proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other." Turkette, 101 S.Ct. at 2529.   In Boyle the Court expressly rejected the idea that "the existence of an enterprise may never be inferred from the evidence showing that persons associated with the enterprise engaged in a pattern of racketeering activity," and reiterated "that the evidence used to prove the pattern of racketeering activity and the evidence establishing an enterprise 'may in particular cases coalesce.'" Boyle, 129 S.Ct. at 2245 (quoting Turkette, 101 S.Ct. at 2529).

Plaintiffs have identified and described the specific roles that each defendant plays in providing healthcare services to their injured patients and running their respective businesses, but the brief descriptions of the defendants' separate business affairs are not capable of establishing that the alleged enterprise was or is an ongoing organization whose members function or functioned as a

continuing unit for the purpose of executing the scheme to defraud insurance companies by inflating the value of bodily injury claims. Merely pleading that there are several businesses and individuals that sometimes work with each other and that some of the physicians made misrepresentations that caused plaintiffs to pay more in settlements, is not sufficient to plead that defendants have any liability under § 1962(c). Plaintiffs' Complaint lacks factual allegations capable of establishing how the alleged scheme was formed, who — if anyone — was in charge, how each of the defendants participated in the alleged scheme other than providing independent services, or whether there were communications, agreements, or an understanding between the alleged parties that advanced the fraud. Instead, relying on the Supreme Court's recognition in <u>Boyle</u>, 129 S.Ct. at 2245, that evidence for the existence of both a RICO enterprise and a pattern of racketeering activity may, occasionally, coalesce, plaintiffs appear to contend that their allegations that defendants engaged in a pattern of racketeering activity are also sufficient to allege the existence of a RICO enterprise. Although the same allegations of fact can be sufficient to allege both these elements of a RICO offense, plaintiffs' contention is misplaced since the court has already concluded in § II.B.1(a), above, that plaintiffs' factual allegations are not sufficient to allege a pattern of racketeering activity.

Because plaintiffs have failed to plead facts capable of establishing that the alleged association-in-fact enterprise

consisting of Northshore Orthopedics and Memorial MRI (1) existed for purposes other than to commit the predicate acts and/or (2) functioned as a continuing unit over time, plaintiffs' RICO claims based on the existence of an association-in-fact enterprise are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted.

(c)   RICO Conspiracy Is Not Sufficiently Alleged

Subsection (d) of 18 U.S.C. § 1962 makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  "To demonstrate a civil RICO conspiracy, a claimant must show that:  (1) two or more persons agreed to commit a substantive RICO offense, and (2) the defendant knew of and agreed to the overall objective of the RICO offense." See Davis-Lynch, Inc. v. Moreno, 667 F.3d 539, 551 (5th Cir. 2012) (citing Chaney v. Dreyfus Service Corp., 595 F.3d 219, 239 (5th Cir. 2010)).

> A person need not commit or agree to commit the requisite two or more predicate acts of 'racketeering activity' to be held *criminally* liable as a conspirator under RICO. To have standing to establish a *civil* RICO conspiracy, however, a claimant must allege injury from an act that is independently wrongful under RICO.  Injury caused by acts that are not racketeering activities or otherwise wrongful under RICO will not establish a viable civil RICO claim.

Id. at 551-52 (citing Beck v. Prupis, 120 S.Ct. 1608, 1616 (2000) ("[A] civil conspiracy plaintiff cannot bring suit under RICO based on injury caused by *any* act in furtherance of a conspiracy that

might have caused the plaintiff injury.   Rather, such plaintiff must allege injury from an act that is analogous to an 'ac[t] of a tortious character,' . . . meaning an act that is independently wrongful under RICO.").   The Fifth Circuit has stated that "the core of a RICO civil conspiracy is an agreement to commit predicate acts, [therefore] a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement."   Tel-Phonic, 975 F.2d at 1140.

Plaintiffs' Complaint alleges in conclusory fashion that

[s]ince at least 2005, Defendants willfully combined, conspired, and agreed with one another and with others to violate Title 18, United States Code, Section 1962(c), that is, to conduct and/or to participate, directly or indirectly, in the affairs of the Enterprise, the activities of which were conducted through a pattern of racketeering activities, in violation of U.S.C. section 1962(d).[35]

This type of summary pleading is not sufficient to support a RICO claim.   For the reasons stated in § II.B.1(a)(1)(i), above, the court has already concluded that plaintiffs have failed to allege facts capable of establishing which defendants, if any, engaged in predicate acts of mail fraud sufficient to constitute a pattern of racketeering activity.   Absent the allegation of facts capable of establishing that defendants engaged in a pattern of racketeering activity, plaintiffs' claims for RICO conspiracy fail as a matter of law.   See Nolen v. Nucentrix Broadband Networks

---

[35]Plaintiffs' Original Complaint, Docket Entry No. 1, p. 24 ¶ 109.

Inc., 293 F.3d 926, 930 (5th Cir.), cert. denied, 123 S.Ct. 600
(2002) (acknowledging that failure to plead the requisite elements
of another § 1962 violation implicitly means plaintiff cannot plead
a conspiracy to violate that section under § 1962(d)); Manax v.
McNamara, 842 F.2d 808, 812 (5th Cir. 1988) (approving dismissal of
RICO conspiracy claim because plaintiff failed to sufficiently
plead the existence of a RICO enterprise); Bonton v. Archer
Chrysler Plymouth, Inc., 889 F.Supp. 995, 1005 (S.D. Tex. 1995)
("[B]ecause Bonton has failed properly to allege a violation of
§ 1962(c), her § 1962(d) claim is without basis."). Accordingly,
plaintiffs' RICO conspiracy claims are subject to dismissal
pursuant to Rule 12(b)(6) for failure to state a claim for which
relief may be granted.

        2.    State Law Claims

    Plaintiffs' common law claims for fraud, conspiracy, and
unjust enrichment are based on the same facts alleged in support of
their RICO claims. For the reasons explained below, the court
concludes that these claims are subject to dismissal for failure to
plead fraud with particularity as required by Rule 9(b).

        (a)  Common Law Fraud

    Under Texas law the elements of common law fraud are "a
material misrepresentation, which was false, and which was either
known to be false when made or was asserted without knowledge of
its truth, which was intended to be acted upon, which was relied

                              -34-

upon, and which caused injury." <u>Formosa Plastics Corp. USA v.</u>
<u>Presidio Engineers and Contractors, Inc.</u>, 960 S.W.2d 41, 47 (Tex.
1998) (quoting <u>Sears, Roebuck & Co. v. Meadows</u>, 877 S.W.2d 281, 282
(Tex. 1994)).   Federal Rule of Civil Procedure 9(b) requires
plaintiffs to plead "[i]n alleging fraud or mistake, a party must
state with particularity the circumstances constituting fraud or
mistake." Fed. R. Civ. P. 9(b).

The plaintiffs' claims for common law fraud are based on
allegations that

114.   Since at least 2005, Defendants, personally or
through agents (law office workers, etc.) acting
at their direction, have made or caused to be made
false and fraudulent material misrepresentations
of fact to Plaintiffs; specifically, false and
misleading    statements    and    representations
concerning the reasonableness and necessity of
treatment and diagnostic tests, and the need for
future treatment, including surgery, in regard to
the events described in this Complaint.

115.   The misrepresentations are conveyed to Plaintiffs
through (1) representation letters issued through
the Stern, Miller & Higdon firm and, during the
period in which Attorney Stern and Talamas was
directing its operation, the "Law Office of Joseph
Stang," (2) attorney demand letters issued by
these offices, and (3) medical records, reports,
and billings generated by Northshore Orthopedic
and Memorial MRI and provided to the law offices
to  be  included  in  demand  packages.     The
misrepresentations made to Plaintiffs in these
documents include:

a.   The patients sustained severe injuries in the
accidents  at  issue,  beyond  soft  tissue
injuries;

b.   Referrals  to  Memorial  MRI  for  MRIs  were
reasonable and necessary;

c.  MRIs showed herniations or other disc injuries;

d.  Referrals for neurodiagnostic testing were reasonable and necessary;

e.  Results of neurodiagnostic testing were positive, and showed radiculopathy, etc.;

f.  Referrals for surgical injection procedures were reasonable and necessary;

g.  Referrals for "second opinion" orthopedic consultation examinations were reasonable and necessary;

h.  That the patient will, in reasonable medical probability, require surgery in the future, due to injuries caused by the accident.

116.  The records, reports, billings, and letters do not disclose material facts, such as the relationship between Northshore Orthopedic, Memorial MRI, Quality Drill Media, the physicians, and the law offices.  The documents also did not disclose that the "Law Office of Joseph Stang" was actually controlled by Stern and Talamas.

117.  At the time the statements and representations were made, Defendants were aware of the falsity of the misrepresentations.

118.  Defendants made the misrepresentations with the intent to deceive Plaintiffs, and with the intent that Plaintiffs would act on the misrepresentations by paying Defendants sums of money in settlement of claims.

119.  Plaintiffs relied on the misrepresentations, and thereby suffered injury by paying sums of money in settlement of the claims.[36]

Plaintiffs' allegations are insufficient to state a claim for fraud under Texas law because they are conclusory and unsupported

_____

[36]Id. at pp. 25-26 ¶¶ 114-119.

by facts capable of establishing that any of the defendants engaged in fraudulent acts.  Instead, plaintiffs allege only that unspecified defendants engaged in general categories of fraud.  Plaintiffs have not identified the speaker, time, place, or content of any fraudulent misrepresentations, nor have plaintiffs explained why the misrepresentations are fraudulent, or that they reasonably relied on any such misrepresentations to their detriment.  Absent such allegations, plaintiffs' claims for common law fraud are subject to dismissal.  See Tel-Phonic, 975 F.2d at 1139 (recognizing that plaintiffs pleading fraud claims must state the who, what, when, and where before access to the discovery process is granted).

            (b)   Common Law Conspiracy

    "[A] plaintiff alleging a conspiracy to commit fraud [claim] must 'plead with particularity the conspiracy as well as the overt acts . . . taken in furtherance of the conspiracy.'"  Kanneganti, 565 F.3d at 193.  In Texas a civil conspiracy is "a combination of two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means."  Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996).  "[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable."  Id.  See also Allstate Insurance Co. v. Receivable Finance Co. L.L.C., 501 F.3d 398, 414 (5th Cir. 2007) (recognizing that unless at least one defendant can be held

-37-

liable for fraud, co-defendants cannot be held liable for conspiracy under Texas law).

Plaintiffs' conspiracy claims are based on allegations that

121.   Beginning about 2005 and continuing through 2010, Defendants willfully combined, conspired, and agreed with each other and others to defraud Plaintiffs.   Defendants, in combination with themselves and others, knowingly made false and misleading statements in regard to the existence, nature, and severity of the injuries to automobile collision patients, and the need for diagnostic testing, consultation examinations, treatment, and need for future surgery.

122.   The object of the conspiracy was to defraud Plaintiffs.  There was a meeting of the minds and agreement on this course of action by each Defendant, and each Defendant played a specific role in the overall scheme to defraud Plaintiffs and other insurers.  The Defendants, separately or in concert with other Defendants and/or other parties, committed overt, unlawful acts in furtherance of this course of action.

123.   The false and fraudulent misrepresentations and omissions alleged above were made by Defendants and others with the purpose and intent to deceive Plaintiffs and to induce Plaintiffs to pay Defendants sums of money to which they were not legally entitled.

124.   As a direct and proximate result of Defendants' conduct, Plaintiffs have paid sums in regard to the fraudulent treatment, billing, and referral practices arising from automobile collisions in which the claimant went to Northshore Orthopedic and Memorial MRI. . .[37]

For the reasons stated in § II.B.2(a), above, the court has already concluded that plaintiffs have not pled facts sufficient to establish that defendants engaged in common law fraud.  Because

---

[37]Id. at 26-27 ¶¶ 121-124.

plaintiffs have failed to plead facts capable of establishing their claims for common law fraud, plaintiffs' claims for civil conspiracy to commit common law fraud are subject to dismissal for failure to state a claim for which relief may be granted.

(c)   Unjust Enrichment

Defendants argue that plaintiffs' unjust enrichment claims are subject to dismissal because plaintiffs have failed to allege facts capable of establishing that defendants wrongfully obtained a benefit through fraud.   Unjust enrichment arises in equity and results from one's failure to pay for benefits wrongfully obtained. See Heldenfels Brothers, Inc. v. City of Corpus Christi, 832 S.W.2d 39, 42 (Tex. 1992) ("Unjust enrichment is not a proper remedy merely because it might appear expedient or generally fair that some recompense be afforded for an unfortunate loss to the claimant, or because the benefits to the person sought to be charged amount to a windfall"); Hoffman v. L & M Arts, 774 F.Supp.2d 826, 848 n.18 (N.D. Tex. 2011) (recognizing that unjust enrichment is not an independent cause of action under Texas law). When a complaint fails to articulate an actual claim upon which unjust enrichment may be granted as a form of equitable relief, the unjust enrichment claim must be dismissed pursuant to Rule 12(b)(6).   Heldenfels, 832 S.W.2d at 42.

Plaintiffs' claims for unjust enrichment are based on allegations that

127.   . . . Defendants have made false and fraudulent representations of fact to Plaintiffs, in regard to the existence, nature, and severity of supposed soft tissue injuries allegedly attributable to automobile collisions, and willfully combined, conspired, and agreed with each other and others to defraud Plaintiffs.

128.   Defendants have unjustly obtained a benefit from Plaintiffs, namely the payment for healthcare expenses that were unreasonable and unnecessary, and designed to enrich Defendants to Plaintiffs' detriment.

129.   As a direct and proximate result of Defendants' conduct, Plaintiffs have paid sums, and Defendants have been benefited [sic] from those payments, in connection with the treatment, billing, and referral practices arising from automobile collisions in which the claimant was referred to Northshore Orthopedics and Memorial MRI.[38]

These allegations reflect that plaintiffs base their unjust enrichment claim on defendants' allegedly fraudulent conduct. However, for the reasons stated in §§ II.B.2(a) and (b), above, the court has already concluded that plaintiffs have failed to allege facts capable of establishing their claims for common law fraud or conspiracy to commit common law fraud. Because plaintiffs have failed to allege facts capable of establishing their claims for common law fraud and/or conspiracy to commit common law fraud, plaintiffs have failed to allege facts capable of establishing that defendants were unjustly enriched by committing fraudulent acts. Accordingly, plaintiffs' claims for unjust enrichment are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted.

---

[38]Id. at 27-28 ¶¶ 127-129.

### III.   Defendants' Motions for More Definite Statement and Plaintiffs' Request to File an Amended Complaint

In the event that the court declines to dismiss plaintiffs' claims, defendants seek an order pursuant to Rule 12(e) directing the plaintiffs to provide a more definite statement of their claims; and in the event that the court determines that plaintiffs' Original Complaint is insufficient to withstand defendants' motions to dismiss, plaintiffs seek leave to file an amended complaint.

### A.   Standard of Review

Rule 12(e) permits a party to move for a more definite statement when "a pleading to which a responsive pleading is permitted is so vague or ambiguous that the party cannot reasonably be required to frame a responsive pleading."   Fed. R. Civ. P. 12(e).   See Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir. 1999).   Motions for more definite statement "must point out the defects complained of and the details desired."   Fed. R. Civ. P. 12(e).   Rule 12(e) motions are used to remedy an unintelligible pleading; they are not used to clarify a pleading that lacks detail, and they are not intended to serve as a substitute for discovery.   See Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126, 132 (5th Cir. 1959); Nebout v. City of Hitchcock, 71 F.Supp.2d 702, 706 (S.D. Tex. 1999).   In deciding whether to grant a Rule 12(e) motion, the trial judge is given considerable discretion.   See Ditcharo v. United Parcel Service, Inc., 376 Fed. App'x. 432, 440 n.9 (5th Cir. 2010) (citing Old Time Enterprises,

Inc. v. International Coffee Corp., 862 F.2d 1213, 1217 (5th Cir. 1989) ("[Courts of appeal] review order made pursuant to Rule 12(e) for abuse of discretion.").

## B.   Analysis

Citing their respective motions to dismiss, the defendants who have moved for more definite statements argue that plaintiffs' complaint fails to state claims for relief that are plausible on the face of the complaint, and fails to plead with the requisite particularity claims sounding in fraud.  Should the court determine that the deficiencies do not warrant dismissal, defendants argue that the court should, at a minimum, order plaintiffs to replead and provide a more definite statement as to the specifics and particularities of their claims in compliance with Rules 8(a) and 9(b).   Defendants assert that unless plaintiffs replead their claims with the specificity required by Rule 9(b), they cannot prepare an answer that adequately addresses the plaintiffs' over-broad allegations.[39]

Plaintiffs ask the court for leave to file an amended complaint if the court finds that they have failed to plead sufficient facts to state a claim for relief.  A party may amend its pleading once as a matter of course within twenty-one days of serving it or twenty-one days after service of a motion under

---

[39]See, e.g., Defendant Omar Vidal, M.D.'s Motion for More Definite Statement Pursuant to Rule 12(e), Docket Entry No. 32, p. 3 ¶ 6.

-42-

Rule 12(b), whichever is earlier. Fed. R. Civ. P. 15(a). In all
other cases, a party may only amend its pleadings with the written
consent of the opposing party or with the court's leave. Fed. R.
Civ. P. 15(a)(2). Pursuant to Federal Rule of Civil Procedure
15(a), courts should "freely give leave when justice so requires."
Fed. R. Civ. P. 15(a)(2).

For the reasons explained above the court has concluded that
the claims asserted in Plaintiffs' Original Complaint are subject
to dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to
state a claim for which relief may be granted or Fed. R. Civ.
P. 9(b) for failure to plead fraud with particularity. Although
defendants' motions put plaintiffs on notice that their pleadings
were insufficient, plaintiffs have neither cured their pleading
deficiencies by submitting an amended complaint, nor have
plaintiffs attached a proposed amended complaint to their request
for leave to amend. In similar situations courts often require
plaintiffs seeking to assert RICO claims based on fraud either to
replead their complaint or to file a case statement explaining how
their allegations satisfy RICO. See, e.g., Marriott Bros. v. Gage,
911 F.2d 1105, 1107 (5th Cir. 1990); Elliott, 867 F.2d at 880; Old
Time Enterprise v. International Coffee Corp., 862 F.2d 1213, 1218
(5th Cir. 1989). The court has concluded that plaintiffs' Original
Complaint should be dismissed, but because Rule 15(a) creates a
liberal standard for granting leave to amend, the court concludes
that allowing plaintiffs to amend their pleadings will satisfy both

the interests of justice embodied by Rule 15(a) and defendants'
requests for a more definite statement.

### IV.  Conclusions and Order

For the reasons explained above, the court concludes that the
claims asserted in Plaintiffs' Original Complaint are subject to
dismissal pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state
a claim for which relief may be granted and/or Rule 9(b) for
failure to plead fraud with particularity, but that instead of
dismissing this action, plaintiffs' request to amend and
defendants' requests for a more definite statement should both be
granted and plaintiffs ordered to file an amended complaint.
Accordingly, the Motion to Dismiss or, in the Alternative, Motion
for a More Definite Statement and Request for an Order Requiring a
RICO Case Statement on Behalf of Defendants Memorial MRI, Shailesh
Patel, Michael Hilliard, and Kim Tran (Docket Entry No. 20) is
**GRANTED**; Defendants William F. Donovan, M.D. and Northshore
Orthopedics Assoc.'s Preliminary Motions to Dismiss Pursuant to
Rules 12(b)(6) and 9(b), and Alternative Motion to Dismiss State
Law Claims Pursuant to 28 U.S.C. § 1367(c) (Docket Entry No. 21),
is **GRANTED IN PART AND DENIED IN PART**; Defendants William F.
Donovan, M.D. and Northshore Orthopedics Assoc.'s Motion for More
Definite Statement Pursuant to Rule 12(e) (Docket Entry No. 22) is
**GRANTED**; Defendants John Talamas and Quality Drill Media, L.L.C.'s
Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b) (Docket Entry
No. 27) is **GRANTED**; Defendant Lorenzo Farolan's Motion to Dismiss

-44-

Pursuant to Rules 12(b)(6) and 9(b) (Docket Entry No. 31) is **GRANTED**; Defendant Omar Vidal, M.D.'s Motion for More Definite Statement Pursuant to Rule 12(e) (Docket Entry No. 32) is **GRANTED**; Defendant Omar Vidal, M.D.'s Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b), and Alternative Motion to Dismiss State Law Claims Pursuant to 28 U.S.C. § 1367(c) (Docket Entry No. 33) is **GRANTED IN PART AND DENIED IN PART**; and Defendant David Dent, D.O.'s Motion to Dismiss Pursuant to Rules 12(b)(6) and 9(b), and Alternative Motion to Dismiss State Law Claims Pursuant to 28 U.S.C. § 1367(c) (Docket Entry No. 34) is **GRANTED IN PART AND DENIED IN PART**.

Within twenty (20) days from the entry of this Memorandum Opinion and Order plaintiffs shall file an amended complaint that contains a statement of facts sufficient to support a civil claim under 18 U.S.C. § 1962 and that conforms with the following outline:

**1.   Parties**

    A.   Name each defendant and explain the specific misconduct or the factual basis of liability for each defendant.

    B.   Name all non-party wrongdoers and explain the misconduct of each.

    C.   Name the plaintiffs and describe the injury to each.

**2.   Racketeering Activities**

    A.   List the specific statutes violated and the particular facts for each.

-45-

B.  Provide the dates, name the participants, and provide a description of the facts for each predicate act.

C.  If the predicate act is wire or mail fraud, state with particularity the circumstances of the fraud by identifying the time, place, and content of the misrepresentations and to whom they were made.

D.  State whether there has been a criminal conviction for the predicate acts.

E.  State whether any of the predicate acts have been the basis of a judgment in civil litigation.

F.  Describe how the predicate acts form a pattern of racketeering activity.

G.  State how the predicate acts relate to each other as part of a common plan.

3.  **Enterprise:  Describe the Enterprise for Each Claim**

A.  Provide the names of the individuals, partnerships, corporations, associations, or other entities that make up the enterprise.

B.  Describe the organization, purpose, function, and course of conduct of the enterprise.

C.  State whether the defendants are employees, officers, or directors of the enterprise or its components.

D.  Explain how the defendants are, in any way, associated with the enterprise.

E.  Explain whether the defendants are individuals or entities separate from the enterprise, whether the defendants are the enterprise, or whether the defendants are members of the enterprise.

F.  If the defendants are the enterprise or its members, explain whether the defendants are perpetrators, passive instruments, or victims of the racketeering activities.

4.   **Enterprise:   Racketeering Nexus**

    A.   Explain whether the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

    B.   Describe the relationship between the racketeering activity and the enterprise; explain how the racketeering activity differs from the regular business of the enterprise.

    C.   Describe what benefits the enterprise receives from the racketeering activity.

5.   **Section 1962 Subsections**

    A.   If the complaint alleges a violation of § 1962(a), state who received the income derived from the pattern of racketeering activity and describe how the income was used or invested.

    B.   If the complaint alleges a violation of § 1962(b), describe the acquisition or maintenance of interest in or control of the enterprise.

    C.   If the complaint alleges a violation of § 1962(c), state who is employed or associated with the enterprise and whether the same entity is both the liable person and enterprise under § 1962(c).

    D.   If the complaint alleges a violation of § 1962(d), describe the conspiracy.

6.   **Interstate Commerce:** Describe how the racketeering activities of the enterprise affect interstate commerce

7.   **Damages**

    A.   Describe all injuries to business or property.

    B.   Explain the causal relationship between the injury and the violation of § 1962.

    C.   List the damages sustained due to violation of § 1962, and indicate the amount for which each defendant is responsible factually.

-47-

8.  **State Law Claims:**    If plaintiffs persist in asserting state law claims for fraud, conspiracy, and unjust enrichment, plaintiffs must amend their statement of the factual basis in response to the courts discussion of these claims in § II.B.2, above.

**SIGNED** at Houston, Texas, on this the 3rd day of July, 2012.

SIM LAKE
UNITED STATES DISTRICT JUDGE