IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Allstate Insurance Company, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. H-12-0432 |
| v. | § | |
| | § | |
| William F. Donovan, M.D., et al., | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS WILLIAM F. DONOVAN, M.D.
AND NORTHSHORE ORTHOPEDICS ASSOC.'S
ORIGINAL ANSWER AND ORIGINAL COUNTERCLAIM**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants William F. Donovan, M.D. ("Dr. Donovan") and Northshore Orthopedics Assoc. ("Northshore") (collectively the "Donovan Defendants") file their Original Answer to Plaintiffs' First Amended Original Complaint ("Amended Complaint") and their Original Counterclaim ("Counterclaim") against Plaintiffs Allstate Insurance Co., Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate County Mutual Insurance Company, and Allstate Fire & Casualty Insurance Company (collectively "Allstate"), and respectfully show the following:

**PRELIMINARY STATEMENT**

1.    Allstate, one of the giants of the automobile insurance industry, has launched a significant and effective litigation strategy aimed at damaging the medical practice and impeaching the credibility of physicians involved in the treatment and evaluation of automobile accident victims. Through the mere filing of this suit and assertion of its unfounded claims, Allstate has significantly damaged Dr. Donovan's once-thriving practice, impaired his personal and professional reputation, and raised unfounded questions concerning his credibility as a

treating physician testifying on his patient's behalf in personal injury litigation.  What's more, the filing of this lawsuit has and will continue to impair the rights of patients who seek recovery against insureds covered by Allstate and other insurers, providing insurance defense counsel with an effective vehicle for erroneously impeaching the credibility of the treating physician, whose only proven liability is that he has been sued by the insurance giant for alleged fraud and unlawful racketeering activities.

## ORIGINAL ANSWER

2.      The Donovan Defendants are without sufficient knowledge or information to either admit or deny Allstate's allegation in paragraph 1 of the Amended Complaint as to what Allstate seeks through the filing of this lawsuit.  The Donovan Defendants deny all other allegations set forth in paragraph 1.

3.      The Donovan Defendants are without knowledge or information sufficient to determine the truth or falsity of the allegation in paragraph 2 of the Amended Complaint that, generally, patients were referred to Memorial MRI for MRIs.  The Donovan Defendants admit the allegations in paragraph 2 that the patients identified in paragraphs 170 – 261 of the Amended Complaint ("patients at issue") were referred to Dr. Donovan; Dr. Donovan issued reports recommending that some of the patients at issue undergo neurodiagnostic testing, MRI's and/or CT scans, and surgical injection procedures, including epidural steroid injections; some of the patients at issue underwent recommended neurodiagnostic testing, MRI's and/or CT scans, and surgical injection procedures, performed at the facilities of Memorial MRI and/or Northshore; and Dr. Donovan issued reports recommending that some of the patients at issue undergo other procedures, including but not limited to surgery. The Donovan Defendants deny all other allegations in paragraph 2.

4.      The Donovan Defendants are without sufficient knowledge or information to either admit or deny Allstate's allegation in paragraph 3 of the Amended Complaint as to what it seeks with respect to damages.  The Donovan Defendants deny all other allegations in paragraph 3.

5.      The Donovan Defendants admit the allegations in paragraph 4 of the Amended Complaint that this Court has subject matter jurisdiction over Allstate's claims, but deny that there is any merit to any of those claims.

6.      The Donovan Defendants admit the allegations in paragraph 5 of the Amended Complaint.

7.       The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 6 of the Amended Complaint.

8.      The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 7 of the Amended Complaint.

9.      The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 8 of the Amended Complaint.

10.      The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 9 of the Amended Complaint.

11.      The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 10 of the Amended Complaint.

12.      The Donovan Defendants admit the allegations in paragraph 11 of the Amended Complaint.

13.      The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 12 of the Amended Complaint, except that the Donovan Defendants admit that Farolan has filed a responsive pleading in this cause of action.

14.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 13 of the Amended Complaint, except that the Donovan Defendants admit that Vidal has filed a responsive pleading in this cause of action.

15.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 14 of the Amended Complaint, except that the Donovan Defendants admit that Dent has filed a responsive pleading in this cause of action.

16.     The Donovan Defendants admit the allegations in paragraph 15 of the Amended Complaint.

17.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 16 of the Amended Complaint, except that the Donovan Defendants admit that Talamas has filed a responsive pleading in this cause of action.

18.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 17 of the Amended Complaint, except that the Donovan Defendants admit that Quality Drill Media has filed a responsive pleading in this cause of action.

19.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 18 of the Amended Complaint, except that the Donovan Defendants admit that Memorial MRI & Diagnostic, L.L.C. ("Memorial MRI LLC") has filed a responsive pleading in this cause of action.

20.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 19 of the Amended Complaint, except that the Donovan Defendants admit that Memorial MRI & Diagnostic Center, L.P. ("Memorial MRI LP") has filed a responsive pleading in this cause of action.

21.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 20 of the Amended Complaint, except that the Donovan Defendants admit that Hilliard has filed a responsive pleading in this cause of action.

22.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 21 of the Amended Complaint, except that the Donovan Defendants admit that Patel has filed a responsive pleading in this cause of action.

23.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 22 of the Amended Complaint, except that the Donovan Defendants admit that Tran has filed a responsive pleading in this cause of action.

24.     The Donovan Defendants admit the allegations in paragraph 23 of the Amended Complaint.

25.     The Donovan Defendants deny the allegations in paragraph 24 that, in the early 2000's, Dr. Mark McDonnell, M.D. also officed at Northshore and that Dr. Donovan "regularly" referred patients to Dr. McDonnell. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 24 that Dr. McDonnell was reported to be "the state's third-highest paid doctor in the Texas Workers' Compensation Commission system in 2002." The Donovan Defendants admit all other allegations in paragraph 24.

26.     The Donovan Defendants admit the allegations in paragraph 25 of the Amended Complaint that Dr. McDonnell ceased practicing medicine in Texas in 2005 and let his Texas license to practice medicine expire; and, by 2005, Dr. Donovan no longer saw a large volume of worker's compensation patients.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 25, including the specifics of Dr. Donovan's testimony referenced in footnote 1.

27.     The Donovan Defendants admit that, beginning in 2004, they referred some patients who were involved in automobile collisions and work accidents, as well as other injured patients, to Memorial MRI for diagnostic testing and some medical procedures. The Donovan Defendants deny the allegation in paragraph 26 that Dr. Donovan and Northshore began referring patients to Memorial MRI for diagnostic testing and procedures by the early 2000's.

28.     The Donovan Defendants deny the allegation in paragraph 27 of the Amended Complaint that the Donovan Defendants treated all automobile injury patients "pursuant to 'letters of protection.'" The Donovan Defendants admit all other allegations in paragraph 27.

29.     The Donovan Defendants admit all of the allegations in paragraph 28 of the Amended Complaint.

30.     The Donovan Defendants admit the allegations in the first and third sentences of paragraph 29 of the Amended Complaint, including the quotations set forth in footnote 2.  The Donovan Defendants deny the allegations in the second, fourth, and fifth sentences of paragraph 29.

31.     The Donovan Defendants admit the allegations in the second sentence of paragraph 30 of the Amended Complaint.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the third, fifth, sixth, and eighth sentences of paragraph 30.   The Donovan Defendants deny all other allegations in paragraph 30.

32.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 31 of the Amended Complaint.

33.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 32 of the Amended Complaint.

34.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 33 of the Amended Complaint.

35.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 34 of the Amended Complaint, including footnote 3.

36.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 35 of the Amended Complaint.

37.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 36 of the Amended Complaint, including footnotes 4 - 6.

38.     The Donovan Defendants admit the allegations in paragraph 37 of the Amended Complaint that Talamas is a lay person and that he holds no health care or law license.  The Donovan Defendants deny the allegations in paragraph 37 that Talamas acts as a liaison between Memorial MRI and Northshore and Talamas acts as a liaison between Northshore and the Stern, Miller & Higdon (the "Stern Firm"); Talamas delivers documents between Northshore and Memorial MRI and between Northshore and the Stern Firm; and Talamas communicates with Donovan and Northshore to arrange for patients' diagnostic testing and procedures.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 37.

39.     The Donovan Defendants admit the allegations in paragraph 38 of the Amended Complaint that 1241 Campbell Road is in very close proximity (approximately .14 miles) to 1346 Campbell Road and that Memorial MRI's patients include automobile collision patients, worker's compensation patients, other work injury patients, and non-accident patients. The Donovan Defendants deny that Northshore began referring automobile accident patients and

other patients to Memorial MRI in "the early 2000s" but admit that the Donovan Defendants began referring automobile accident patients and other patients to Memorial MRI in the mid-2000's.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 38, including footnote 7.

40.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 39 of the Amended Complaint, including footnotes 9 and 10.

41.     The Donovan Defendants admit the allegation in paragraph 40 of the Amended Complaint that Memorial MRI's website lists only Dr. Lee in its "Radiologist" section. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 40, including footnote 8.

42.     The Donovan Defendants admit the allegations in paragraph 41 of the Amended Complaint that Dr. Farolan is a radiologist; he officed in McAllen, Texas during the period at issue; and, on occasion, Dr. Donovan and Northshore sent MRI films to Dr. Farolan's McAllen office for additional review by Dr. Farolan. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 41.

43.     The Donovan Defendants admit the allegations in paragraph 42 of the Amended Complaint that some "second opinion" reviews by Dr. Farolan concerned MRIs conducted at a facility or facilities other than Memorial MRI; that, on occasion, Dr. Donovan and Northshore Orthopedics sent Dr. Farolan MRI films for a "second opinion" review; and, on occasion, Dr. Donovan communicated with Dr. Farolan by telephone in regard to particular patients. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 42.

44.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegation in paragraph 43 of the Amended Complaint that Dr. Vidal has been licensed to practice medicine in Texas since 1999. The Donovan Defendants admit all other allegations in paragraph 43.

45.     The Donovan Defendants deny the allegations in paragraph 44 of the Amended Complaint that Dr. Vidal was "recruited" by Dr. Donovan. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 44.

46.     The Donovan Defendants admit the allegations in paragraph 45 of the Amended Complaint that Dr. Dent is a pain management and occupational medicine physician and that he performed surgical injection procedures at Memorial MRI during the period at issue.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 45.

47.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 46 of the Amended Complaint.

48.     The Donovan Defendants would show that Dr. Donovan is not, and never has been, a "director" or "consultant" for Memorial MRI.  Subject to that clarification, the Donovan Defendants deny the allegation in paragraph 47 of the Amended Complaint that whether Dr. Donovan is a "director" or "consultant" for Memorial MRI is solely within his and other defendants' personal knowledge.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 47.

49.     The Donovan Defendants deny the allegation in paragraph 48 of the Amended Complaint that the Donovan Defendants "understand the 'value' added to personal injury claims by the diagnostic tests and procedures performed at Memorial MRI."  The Donovan Defendants

are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 48, including footnote 11.

50.     The Donovan Defendants deny the allegation in paragraph 49 that Talamas acted as a liaison and courier between Memorial MRI and Northshore and between the Stern Firm and Northshore. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 49.

51.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 50.

52.     The Donovan Defendants deny the allegation in paragraph 51 of the Amended Complaint that Quality Drill Media, L.L.C. conducts business at Northshore.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 51.

53.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 52.

54.     The Donovan Defendants admit that Talamas has served as the Chief Operating Officer and Director of Operations of Spine Pain Management, Inc. ("SPIN") and that Dr. Donovan became CEO of SPIN in 2009.  The Donovan Defendants admit to the accuracy of the quotations in paragraph 53 from http://www.spinepaininc.com/management.php and SPIN's Form 10-K filing with the S.E.C. in March 2012.  The Donovan Defendants deny all other allegations in paragraph 53.

55.     The Donovan Defendants admit the allegations in paragraph 54 of the Amended Complaint.

56.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 55 of the Amended Complaint.

57.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 56 of the Amended Complaint, including footnote 13.

58.     The Donovan Defendants deny the allegation in paragraph 57 of the Amended Complaint that Talamas and/or Quality Drill Media coordinated treatment of the Stern Firm's personal injury clients at Northshore.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 57.

59.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 58 of the Amended Complaint.

60.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 59 of the Amended Complaint.

61.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 60 of the Amended Complaint.

62.     The Donovan Defendants would show that they are generally aware of media reports concerning the allegations in paragraph 61 of the Amended Complaint.  Subject to that clarification, the Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 61, including footnote 14.

63.     The Donovan Defendants would show that they are generally aware of media reports concerning the allegations in paragraph 62 of the Amended Complaint.  Subject to that clarification, the Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 62, including footnotes  15 and 16.

64.     The Donovan Defendants deny the allegations in paragraph 63 of the Amended Complaint and incorporate by reference their responses to paragraphs 144 through 261.

65.     The Donovan Defendants admit the allegations in paragraph 64 of the Amended Complaint that Northshore formed in 1997 and that Dr. Donovan and Northshore began referring patients to Memorial MRI prior to late 2005.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 64.

66.     The Donovan Defendants admit the allegations in paragraph 65 of the Amended Complaint.

67.     The Donovan Defendants admit the allegations in paragraph 66 of the Amended Complaint.

68.     The Donovan Defendants admit the allegations in paragraph 67 of the Amended Complaint.

69.     The Donovan Defendants would show that, pursuant to the Texas Medical Practices Act, Tex. Occ. Code Ann., Sections 159.005 and 159.006 (West 2001), the Donovan Defendants are required to provide copies of requested billing or medical records, or a summary or narrative of requested billing or medical records, to patients and their designees upon the patient's written consent for release of confidential information, regardless of whether the Donovan Defendants are treating the consenting patient under a letter of protection.  Subject to this clarification, the Donovan Defendants admit the allegation in paragraph 68 of the Amended Complaint that Northshore forwards records to the patient's attorney when the patient has signed a written consent for release of confidential information that permits Northshore to release the patient's records to his or her attorney.  The Donovan Defendants would also show that Northshore does not receive payment from patients' attorneys from the patients' settlement proceeds for all personal injury claims asserted by Dr. Donovan's patients.  Subject to this clarification, the Donovan Defendants admit the allegation in paragraph 68 of the Amended Complaint that, when applicable, the patients' attorney pays Northshore from settlement

proceeds. The Donovan Defendants admit that, in cases where the patient is not asserting a personal injury claim, Northshore bills the patients or their healthcare insurer for its services. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 68 of the Amended Complaint.

70.     The Donovan Defendants respond to the allegations in paragraph 69 in the same manner as they responded to the paragraphs that paragraph 69 seeks to incorporate by reference.

71.     The Donovan Defendants deny the allegations in paragraph 70 of the Amended Complaint.

72.     The Donovan Defendants deny the allegations in paragraph 71 of the Amended Complaint.

73.     The Donovan Defendants deny the allegations in paragraph 72 of the Amended Complaint.

74.     The Donovan Defendants deny all of the allegations in paragraph 73 of the Amended Complaint.

75.     The Donovan Defendants deny the allegations in paragraph 74 of the Amended Complaint.

76.     The Donovan Defendants deny all of the allegations in paragraph 75 of the Amended Complaint.

77.     The Donovan Defendants deny all of the allegations in paragraph 76 of the Amended Complaint.

78.     The Donovan Defendants deny all of the allegations in paragraph 77 of the Amended Complaint, except that the Donovan Defendants admit the allegation in footnote 17 that Allstate does not allege in its Amended Complaint that Memorial MRI & Diagnostic Center, L.P. is a "RICO Person (Defendant) in regard to Count Two, the Center Enterprise."

79.    The allegation in paragraph 78 of the Amended Complaint that the mail fraud statute does not require that a defendant used the mails himself, or actually intended the mail to be used, is a legal conclusion that the Donovan Defendants can neither admit nor deny.  The Donovan Defendants deny all other allegations in paragraph 78, except that the Donovan Defendants admit the allegation in footnote 18 that Allstate does not allege in its Amended Complaint that Memorial MRI & Diagnostic Center, L.P. is a RICO Person (Defendant) in regard to Count Two, the Center Enterprise.

80.    The Donovan Defendants deny all of the allegations in paragraph 79 of the Amended Complaint.

81.    The Donovan Defendants deny all of the allegations in paragraph 80 of the Amended Complaint.

82.    The Donovan Defendants admit the allegations in paragraph 81 of the Amended Complaint that Dr. Donovan is the owner and operator of Northshore; Dr. Donovan recommended that some of the patients at issue undergo diagnostic testing such as MRI and CT, and Northshore referred those patients to Memorial MRI; Dr. Donovan recommended that some of the patients at issue undergo neurodiagnostic testing, such as EMGs, from Dr. Kahkeshani; Dr. Donovan recommended that some of the patients at issue receive surgical injection procedures, at the estimated cost of $14,000.00 per procedure (including hospital charge, surgeon's charge, and post-surgical rehabilitation) and that these patients at issue were referred to Memorial MRI for these procedures; Dr. Donovan found that some of the patients at issue incurred "significant injuries," as specifically described in Orthopedic Reports from Dr. Donovan to the patients; and Dr. Donovan recommended surgery or "probable surgery" beyond injection procedures for some of the patients at issue.  The Donovan Defendants deny all other allegations in paragraph 81 of the Amended Complaint.

83.     The Donovan Defendants would show that the Orthopedic Reports issued by Dr. Donovan to the patients at issue differ, depending on the patients' symptoms, conditions, and recommended treatment. Subject to this clarification, The Donovan Defendants deny the allegations in paragraph 82 of the Amended Complaint.

84.     The Donovan Defendants would show that Dr. Donovan makes medical findings in Orthopedic Reports issued to the patient and released by Northshore to third parties, including the patient's attorneys, only upon the written authorization and designation of the patient and pursuant to the Texas Medical Practices Act, Tex. Occ. Code Ann., Section 159.006 (West 2001). Subject to this clarification, the Donovan Defendants admit the allegation in paragraph 83 of the Amended Complaint that Dr. Donovan made medical findings as to the patients at issue and made some referrals in some documents, including documents styled "Letter of Medical Necessity."  The Donovan Defendants deny all other allegations in paragraph 83.

85.     The Donovan Defendants would show that, pursuant to the Texas Medical Practices Act, Tex. Occ. Code Ann., Sections 159.005 and 159.006 (West 2001), the Donovan Defendants are required to provide copies of requested billing or medical records, or a summary or narrative of requested billing or medical records, to patients and their designees upon the patient's written consent for release of confidential information, regardless of whether the Donovan Defendants are treating the consenting patient under a letter of protection.  Subject to that clarification, the Donovan Defendants admit the allegation in paragraph 84 of the Amended Complaint that Northshore provided records concerning the patients at issue to the Stern Firm and the Stang Firm.  The Donovan Defendants deny all other allegations in paragraph 84.

86.     The Donovan Defendants admit the allegations in paragraph 85 of the Amended Complaint that Dr. Donovan referred Dr. Vidal to Memorial MRI for possible employment and that Dr. Kahkeshani conducted neurodiagnostic testing on the premises of Northshore.  The

Donovan Defendants would show that Dr. Kahkeshani has worked as an independent contractor at Northshore for over 20 years.  Subject to that clarification, the Donovan Defendants deny all other allegations in paragraph 85.

87.    The Donovan Defendants deny the allegations in paragraph 86 of the Amended Complaint.

88.    The Donovan Defendants deny the allegations in paragraph 87 of the Amended Complaint.

89.    The Donovan Defendants admit that Northshore issued billings and that Northshore's billings included testing by Dr. Kahkeshani on its premises.   The Donovan Defendants deny all other allegations in paragraph 88.

90.    The Donovan Defendants admit the allegations in paragraph 89 of the Amended Complaint.

91.    The Donovan Defendants would show that, pursuant to the Texas Medical Practices Act, Tex. Occ. Code Ann., Sections 159.005 and 159.006 (West 2001), the Donovan Defendants are required to provide copies of requested billing or medical records, or a summary or narrative of requested billing or medical records, to patients and their designees upon the patient's written consent for release of confidential information, regardless of whether the Donovan Defendants are treating the consenting patient under a letter of protection.  Subject to that clarification, the Donovan Defendants admit that Northshore transmitted patient records to the Stern Firm and Stang Firm.  The Donovan Defendants deny all other allegations in paragraph 90.

92.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 91 of the Amended Complaint concerning Dr. Clayton.  The Donovan Defendants admit all other allegations in paragraph 91.

93.     The Donovan Defendants admit the allegations in paragraph 92 of the Amended Complaint that Dr. Farolan issued some reports stating that  injuries, such as herniations, existed in regard to some of the patients at issue.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 92.

94.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 93 of the Amended Complaint.

95.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 94 of the Amended Complaint.

96.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 95 of the Amended Complaint that Talamas acted as a liaison between Memorial MRI and the law offices, that Talamas coordinated treatment of the law office's clients at Memorial MRI and/or transmitted Stern's desires concerning treatment to Memorial MRI, that Talamas couriered documents between the law firms and Memorial MRI, and that Talamas delivered funds to Memorial MRI from the proceeds of settlements.  The Donovan Defendants would show that, on occasion, Talamas hand delivered payments from the law offices to the Donovan Defendants.  The Donovan Defendants deny all other allegations in paragraph 95.

97.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 96 of the Amended Complaint.

98.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 97 of the Amended Complaint.

99.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 98 of the Amended Complaint.

100.     The Donovan Defendants deny the allegation in paragraph 99 of the Amended Complaint that Quality Drill Media facilitated the alleged actions of Talamas with respect to Northshore as alleged in paragraph 95 of the Amended Complaint and incorporate their response to paragraph 95 by reference. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 99.

101.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 100 of the Amended Complaint.

102.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 101 of the Amended Complaint.

103.     The Donovan Defendants admit the allegation in paragraph 102 of the Amended Complaint that Dr. Vidal conducted surgical procedures on some of the patients at issue, at Memorial MRI.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegation in paragraph 102 concerning Dr. Vidal's understanding regarding the necessity of the procedures.  The Donovan Defendants deny the allegations in paragraph 102 that the procedures were not necessary and that referrals for the procedures from Northshore were made to inflate the personal injury claims of the patients.

104.     The Donovan Defendants admit the allegations in paragraph 103 of the Amended Complaint that Dr. Vidal issued operative reports for some of the patients at issue and provided the reports to Northshore.  The Donovan Defendants deny the allegation in paragraph 103 that, by issuing operative reports concerning the procedures, Dr. Vidal substantiated the supposed need for the procedures. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 103.

105.     The Donovan Defendants admit the allegation in paragraph 104 of the Amended Complaint that Dr. Dent conducted surgical injection procedures on some of the patients at issue,

at Memorial MRI.  The Donovan Defendants are without sufficient knowledge or information to either admit of deny the allegation in paragraph 104 that Dr. Dent understood the procedures were not necessary.  The Donovan Defendants deny the allegations in paragraph 104 of the Amended Complaint that the procedures were not necessary and that referrals for the procedures from Northshore were made to inflate the personal injury claims of the patients.

106.    The Donovan Defendants admit the allegations in paragraph 105 of the Amended Complaint that Dr. Dent issued operative reports and provided the reports to Northshore.  The Donovan Defendants deny the allegation in paragraph 105 that, by issuing operative reports concerning the procedures, Dr. Dent substantiated the supposed need for the procedures. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 105.

107.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 106 of the Amended Complaint.

108.    The Donovan Defendants deny the allegation in paragraph 107 of the Amended Complaint that "unnecessary referrals and services" are "outlined above" in the Amended Complaint.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 107.

109.    The Donovan Defendants deny the allegation in paragraph 108 of the Amended Complaint that treatments received at Memorial MRI facilities by the patients at issue were "unnecessary."  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 108 of the Amended Complaint.

110.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 109 of the Amended Complaint.

111.    The Donovan Defendants deny the allegations in paragraph 110 of the Amended Complaint that Dr. Donovan or Northshore were "directors" or "consultants" for Memorial MRI LLC and that Memorial MRI LLC paid Dr. Donovan or Northshore for referrals to Memorial MRI facilities.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 110.

112.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 111 of the Amended Complaint.

113.    The Donovan Defendants deny the allegation in paragraph 112 of the Amended Complaint that referrals and/or services performed at Memorial MRI & Diagnostic LP facilities were unnecessary.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 112.

114.    The Donovan Defendants deny the allegation in paragraph 113 of the Amended Complaint that treatments received by patients at issue at Memorial MRI facilities were unnecessary.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 113.

115.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 114 of the Amended Complaint.

116.    The Donovan Defendants deny the allegations in paragraph 115 of the Amended Complaint that Dr. Donovan or Northshore were "directors" or "consultants" for Memorial MRI LP and deny that Memorial MRI LP paid Dr. Donovan or Northshore for referrals to Memorial MRI facilities.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 115.

117.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 116 of the Amended Complaint.

118.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 117 of the Amended Complaint.

119.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 118 with respect to referrals of patients at issue by treating clinics to Memorial MRI.   The Donovan Defendants deny all other allegations in paragraph 118.

120.     The Donovan Defendants deny the allegations in paragraph 119 of the Amended Complaint that Dr. Donovan or Northshore were "directors" or "consultants" for Memorial MRI and that Memorial MRI paid Dr. Donovan or Northshore for referrals to Memorial MRI facilities.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 119.

121.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 120 of the Amended Complaint.

122.     The Donovan Defendants deny the allegation in paragraph 121 of the Amended Complaint that Dr. Farolan could be relied upon by Dr. Donovan or Northshore to "find" serious injuries and conditions, regardless of what the test showed.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 121.

123.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 122 of the Amended Complaint.

124.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 123 of the Amended Complaint.

125.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 124 with respect to referrals of patients at issue

by treating clinics to Memorial MRI.  The Donovan Defendants deny all other allegations in paragraph 124.

126.     The Donovan Defendants deny the allegations in paragraph 125 of the Amended Complaint that Dr. Donovan or Northshore were "directors" or "consultants" for Memorial MRI and deny that Memorial MRI paid Dr. Donovan or Northshore for referrals to Memorial MRI facilities.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 125.

127.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 126 of the Amended Complaint.

128.     The Donovan Defendants deny the allegation in paragraph 127 of the Amended Complaint that Dr. Farolan could be relied upon by Dr. Donovan or Northshore to "find" serious injuries and conditions, regardless of what the test showed.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 127 of the Amended Complaint.

129.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 128 of the Amended Complaint.

130.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 129 of the Amended Complaint.

131.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 130 with respect to referrals of patients at issue by treating clinics to Memorial MRI.  The Donovan Defendants deny all other allegations in paragraph 130.

132.     The Donovan Defendants deny the allegations in paragraph 131 of the Amended Complaint that Dr. Donovan or Northshore were "directors" or "consultants" for Memorial MRI

and deny that Memorial MRI paid Dr. Donovan or Northshore for referrals to Memorial MRI facilities. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 131 of the Amended Complaint.

133. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 132 of the Amended Complaint.

134. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 133 of the Amended Complaint.

135. The Donovan Defendants deny the allegation in paragraph 134 of the Amended Complaint that Dr. Farolan could be relied upon by Dr. Donovan or Northshore to "find" serious injuries and conditions, regardless of what the test showed. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 134 of the Amended Complaint.

136. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 135 of the Amended Complaint.

137. The Donovan Defendants admit the allegation in paragraph 136 of the Amended Complaint that Dr. Clayton was a radiologist evaluating MRIs at Memorial MRI during late 2005 through August 2006. The Donovan Defendants deny the allegation in paragraph 136 of the Amended Complaint that Dr. Clayton's reports would be used by the Donovan Defendants as justification for unnecessary referrals for further services. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 136 of the Amended Complaint.

138. The Donovan Defendants admit the first two sentences of paragraph 137 of the Amended Complaint, except that they deny that any facts relating to Dr. Kahkeshani are set forth in paragraph 8 of the Amended Complaint. The Donovan Defendants would show that

Northshore collected fees for Dr. Kahkeshani's services performed at Northshore, which were offset by payments to Dr. Kahkeshani for his services and other expenses associated with Dr. Kahkeshani's services at Northshore, including overhead and facility use. Subject to that clarification, the Donovan Defendants deny all other allegations in paragraph 137.

139. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 138 of the Amended Complaint.

140. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 139 of the Amended Complaint.

141. The Donovan Defendants admit the allegations in paragraph 140 of the Amended Complaint that Jeffrey Stern is the principle member and operator of the Stern Firm. The Donovan Defendants would show that Northshore sometimes received payment for the evaluation and treatment of patients at issue through checks issued from the Stern Firm's trust account. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 140 of the Amended Complaint.

142. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 141 of the Amended Complaint.

143. The Donovan Defendants admit the allegations in paragraph 142 of the Amended Complaint.

144. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 143 of the Amended Complaint that Allstate does not assert damages in regard to amounts it paid in relation to the treatment provided at the initial treating clinic. The Donovan Defendants deny all other allegations in paragraph 143 of the Amended Complaint.

145.     The Donovan Defendants admit that plaintiffs allege in paragraph 144 of the Amended Complaint that defendants violated 18 U.S.C. Section 1962(c) and deny any violation of Section 1962(c) by the Donovan Defendants.

146.     The Donovan Defendants admit that plaintiffs allege in paragraph 145 of the Amended Complaint that defendants violated 18 U.S.C. Section 1962(d) and deny any violation of Section 1962(d) by the Donovan Defendants.

147.     The Donovan Defendants deny the allegations in paragraph 146 of the Amended Complaint that the alleged predicate acts consist of multiple violations of the Mail Fraud statute, 18 U.S.C. Section 1341.  The Donovan Defendants admit all other allegations in paragraph 146.

148.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegation in paragraph 147 of the Amended Complaint that "[t]he 31 patients/claims known to date" are set forth in Section B, pars. 170 – 261 of the Amended Complaint.  The Donovan Defendants deny all other allegations in paragraph 147.

149.     The Donovan Defendants admit the allegations in paragraph 148 of the Amended Complaint that the dates of the accidents at issue range from December 1, 2005 to May 23, 2010.  The Donovan Defendants deny the allegations in paragraph 148 that each of the accidents at issue occurred in the Harris County area and each of the patients at issue "started treating [sic] with a chiropractic or 'multi-disciplinary' clinic prior to any testing, evaluation or treatment" at Northshore or Memorial MRI. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 148.

150.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 149 of the Amended Complaint.

151.     The Donovan Defendants deny the allegations in paragraph 150 of the Amended Complaint that a chiropractic or 'multi-disciplinary' clinic referred all of the patients at issue to

Northshore and that "[t]he patients, at most, had soft tissue complaints which would have resolved with the conservative treatment rendered at the initial treating clinic." The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 150 of the Amended Complaint.

152.    The Donovan Defendants admit the allegations in paragraph 151 of the Amended Complaint that all patients at issue received MRIs or, in some cases, CT scans, at Memorial MRI; some of the patients at issue received MRIs and/or CT scans on more than one area(s) of the body; and, after his examination of some of the patients at issue, Dr. Donovan recommended MRIs or CTs, which these patients thereafter received at Memorial MRI's facilities.   The Donovan Defendants deny all other allegations in paragraph 151 of the Amended Complaint.

153.    The Donovan Defendants deny the allegations in paragraph 152 of the Amended Complaint that the MRIs for three patients at issue were evaluated by Dr. Clayton; that all other MRIs and CTs at issue were evaluated by Dr. Farolan; and that the patients at issue had "nominal 'soft-tissue' injuries.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 152.

154.    The Donovan Defendants admit the allegation in paragraph 153 of the Amended Complaint that Dr. Farolan offices in McAllen, Texas.   The Donovan defendants deny the allegation in paragraph 153 that either Dr. Donovan or Northshore had Dr. Farolan evaluate MRIs and CTs for the patients at issue, rather than Memorial MRI's in-house radiologist, based upon knowledge that "Farolan would provide findings that would justify further referral and support an eventual personal injury claim, and fail to reference degenerative or pre-existing conditions detrimental to a claim." The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 153.

155.    The Donovan Defendants admit the allegation in paragraph 154 of the Amended Complaint that all of the patients at issue were referred to Northshore for evaluation.   The Donovan Defendants deny the allegations in paragraph 154 that Talamas assisted in coordinating referrals to or from Northshore and that the referrals were not reasonable or necessary, but were used as a vehicle to further inflate the claims.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 154.

156.    The Donovan Defendants admit the allegations in paragraph 155 of the Amended Complaint that Dr. Donovan conducted examinations of the patients at issue; that (with respect to three of the 31 patients at issue) Dr. Donovan issued documents entitled "Letter of Medical Necessity"; and that Dr. Donovan stated that the patient's condition was caused by the automobile accident at issue.   The Donovan Defendants deny all other allegations in paragraph 155 of the Amended Complaint.

157.    The Donovan Defendants deny the allegations in paragraph 156 of the Amended Complaint.

158.    The Donovan Defendants admit the allegations in paragraph 157 of the Amended Complaint that "Donovan/Northshore sent several of the patients at issue to Memorial MRI for MRIs or CTs."   The Donovan Defendants deny the allegation in paragraph 157 that all of the MRIs and CTs for the patients at issue were evaluated by Dr. Farolan.

159.    The Donovan Defendants deny the allegations in paragraph 158 of the Amended Complaint that the "recommended charge" for EMG/NCV testing was "either $2,500 or, more often, $4,700"; "the Enterprise retained the amounts it received in payment beyond the flat fee paid to Dr. Kahkeshani"; "Dr. Kahkeshani issued embellished reports, making inaccurate positive neurological findings"; and "Dr. Donovan and Northshore Orthopedics used the

supposed positive neurological findings as justification for further referrals." The Donovan Defendants admit all other allegations in paragraph 158.

160.   The Donovan Defendants would show that Dr. Donovan's Orthopedic Reports issued to some patients at issue estimated the costs of ESI to be $14,500.00, including hospital and surgeon's charges and post surgical rehabilitation. Subject to that clarification, the Donovan Defendants admit the allegation in paragraph 159 of the Amended Complaint that Dr. Donovan stated the costs of each future ESI procedure to be $14,500.00. The Donovan Defendants admit the allegations in footnote 19. The Donovan Defendants deny the allegations in paragraph 159 that "Dr. Donovan/Northshore stated that almost all of the patients at issue required" ESIs; that "[t]he recommendations were not necessary, and were knowingly made to inflate the claim to be submitted by the law offices"; that "any particular patient at issue would be in Defendants' sole knowledge." The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 159.

161.   The Donovan Defendants would show that Dr. Donovan issued Orthopedic Reports that estimated the costs associated with recommended surgeries or probable surgeries and other in-hospital procedures, and these estimated costs included hospital and surgeon charges, post-surgery rehabilitation and/or physical therapy. Subject to that clarification, the Donovan Defendants admit the allegation in paragraph 160 of the Amended Complaint that Dr. Donovan estimated the costs for recommended in-hospital procedures (exclusive of epidural steroid injections), with combined estimated costs ranging up to $160,200.00, with combined estimates exceeding $100,000.00 for five of the patients at issue. The Donovan Defendants would show that Dr. Donovan issued his recommendations based on numerous factors, varying by patient, including hospital reports, initial treating physician medical records, initial radiological reports, personal examinations of the patients, patients' initial and continuing

symptoms, x-rays, MRI reports and CT scan reports, cervical discogram reports, ESI operative reports, and EMG reports.  Subject to that clarification, the Donovan Defendants deny the allegation in paragraph 160 of the Amended Complaint that "Dr. Donovan issued his recommendations, based on the supposed findings of the various referrals and his own examinations" and deny all other allegations in paragraph 160.

162.   The Donovan Defendants would show that, pursuant to the Texas Medical Practices Act, Tex. Occ. Code Ann., Sections 159.005 and 159.006 (West 2001), the Donovan Defendants are required to provide copies of requested billing or medical records, or a summary or narrative of requested billing or medical records, to patients and their designees upon the patient's written consent for release of confidential information, regardless of whether the Donovan Defendants are treating the consenting patient under a letter of protection.  Subject to that clarification, the Donovan Defendants admit the allegation in paragraph 161 of the Amended Complaint that Northshore forwarded medical records and billings generated by the Donovan Defendants to the Stern Firm and Stang Firm; some such patient records included "letters of medical necessity," MRI or CT reports and/or NCV/EMG reports; some records included recommendations for surgery or other in-hospital procedures in the future; and some patient records indicated that the accident at issue caused significant injury to the patient.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 161 of the Amended Complaint that Memorial MRI forwarded medical records and billings to the Stern Firm and Stang Firm; that Talamas/Quality Drill Media participated in the transportation of Memorial MRI documents to the law offices; or what documents were included in the records purportedly forwarded by Memorial MRI to the Stern Firm and Stang Firm.  The Donovan Defendants deny all other allegations in paragraph 161.

163.    The Donovan Defendants would show that, pursuant to the Texas Medical Practices Act, Tex. Occ. Code Ann., Sections 159.005 and 159.006 (West 2001), the Donovan Defendants are required to provide copies of requested billing or medical records, or a summary or narrative of requested billing or medical records, to patients and their designees upon the patient's written consent for release of confidential information, regardless of whether the Donovan Defendants are treating the consenting patient under a letter of protection.  Subject to that clarification, the Donovan Defendants admit the allegation in paragraph 162 of the Amended Complaint that Northshore provided medical records to the law offices.   The Donovan Defendants deny all other allegations in paragraph 162 of the Amended Complaint as they relate to either Dr. Donovan or Northshore.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 162 of the Amended Complaint as they relate to any third parties or defendants other than the Donovan Defendants.

164.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 163 of the Amended Complaint.

165.    The Donovan Defendants deny the allegations in paragraph 164 of the Amended Complaint as they relate to the Donovan Defendants and as they relate to documents generated by the Donovan Defendants. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 164 as they relate to representations made by or documents generated by other healthcare providers, including other defendants, or third parties, including the Stern and Stang Firms.

166.    The Donovan Defendants deny the allegations in paragraph 165 of the Amended Complaint and incorporate by reference the Donovan Defendants' responses to paragraphs 170 – 261.

167.    The Donovan Defendants deny the allegations in paragraph 166 of the Amended Complaint that Northshore had a purported "relationship" with other defendants and/or the law offices; denies that the Donovan Defendants had any 'director' or 'consultant' relationship with Memorial MRI; and denies that any "relationships" described in paragraph 166 are "material facts" that the Donovan Defendants had any duty to disclose. The Donovan Defendants admit all other allegations in paragraph 166, as they relate to documents provided by Northshore to the law firms.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 166 as they relate to records, reports, billings and letters provided by or generated by other healthcare providers, including other defendants, or third parties, including the Stern and Stang Firms.

168.    The Donovan Defendants deny the allegations in paragraph 167 of the Amended Complaint.

169.    The Donovan Defendants deny the allegations in paragraph 168 of the Amended Complaint that "[t]he law offices provided sums from the settlement proceeds to the enterprise." The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 168.

170.    The Donovan Defendants admit the allegation in paragraph 169 of the Amended Complaint that Appendix A to the Amended Complaint includes dates of testing and procedures, such as MRIs, and admit the allegation in paragraph 169, footnote 20.  The Donovan Defendants deny all other allegations in paragraph 169.

171.    The Donovan Defendants admit the allegations in the first two sentences of paragraph 170 of the Amended Complaint.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the third sentence of paragraph 170.  As to subparagraph 170a, the Donovan Defendants admit

that Dr. Donovan referred the patient at issue for diagnostic testing at Memorial MRI and Dr. Farolan evaluated such diagnostic testing and issued a report; and the Donovan Defendants deny all other allegations in subparagraph 170a.  As to subparagraph 170b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future at the estimated cost of $4,700.00 and deny all other allegations in subparagraph 170b. As to subparagraphs 170c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive surgical injection procedures in the future at the estimated cost of $29,000.00, including hospital and surgeon's charges and post-surgical rehabilitation, and the Donovan Defendants deny all other allegations in subparagraph 170c.  As to subparagraph 170d, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for surgical injection procedures at Memorial MRI; that the patient at issue received surgical injection procedures at Memorial MRI, conducted by Dr. Vidal, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 170d.  As to subparagraph 170e, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive cervical discogram C3-T1, lumbar discogram L3-S1, probable cervical spine surgery C4-C7, probable partial discectomy L4-5, L5-S1 right and left, and probable arthroscopic surgery right shoulder, and that the combined estimated cost for these procedures would be $139,338.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 170e.

172.    The Donovan Defendants deny the allegation in the first sentence of paragraph 171 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations

in the first sentence of paragraph 171.  The Donovan Defendants deny the allegations in the second sentence of paragraph 171.

173.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 172 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 172.

174.    The Donovan Defendants admit the allegations in the first two sentences of paragraph 173 of the Amended Complaint.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the third sentence of paragraph 173.  As to subparagraph 173a, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan, who issued a report, but deny all other allegations in subparagraph 173a.  As to subparagraph 173b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future at the estimated cost of $4,700.00 and deny all other allegations in subparagraph 173b.  As to subparagraph 173c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive surgical injection procedures in the future at the estimated cost of  $29,000.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 173c.  As to subparagraph 173d, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for a surgical injection procedure at Memorial MRI and the patient at issue received surgical injection procedures at Memorial MRI, conducted by Dr. Dent, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 173d.  As to subparagraph 173e, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive cervical discogram C2-T1 and

probable partial discectomy L5-S1 right and left, and that the combined estimated cost for these procedures would be $43,638.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 173e.

175.    The Donovan Defendants deny the allegation in the first sentence of paragraph 174 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 174.  The Donovan Defendants deny the allegations in the second sentence of paragraph 174.

176.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 175 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 175.

177.    The Donovan Defendants admit the allegations in the first sentence of paragraph 176 of the Amended Complaint.  The Donovan Defendants admit the allegation in the second sentence of paragraph 176 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 176.  The Donovan Defendants admit the third sentence of paragraph 176.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 176.  As to subparagraph 176a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future at the estimated cost of $4,700.00 and deny all other allegations in subparagraph 176a.  As to subparagraph 176b, the Donovan

Defendants admit that Dr. Donovan recommended that the patient at issue receive a surgical injection procedure in the future at the estimated cost of  $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 176b.  As to subparagraph 176c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive arthroscopic surgery on her right knee and partial discectomy L5-S1 right, and that the combined estimated cost for these procedures would be $52,269.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 176c.

178.   The Donovan Defendants deny the allegation in the first sentence of paragraph 177 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 177.  The Donovan Defendants deny the allegations in the second sentence of paragraph 177.

179.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 178 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 178.

180.   The Donovan Defendants admit the allegations in the first sentence of paragraph 179 of the Amended Complaint.  The Donovan Defendants admit the allegation in the second sentence of paragraph 179 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 179.  The Donovan Defendants admit the third sentence of paragraph 179 of the

Amended Complaint.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 179.   As to subparagraph 179a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future at the estimated cost of $4,700.00 and deny all other allegations in subparagraph 179a.   As to subparagraph 179b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive a surgical injection procedure in the future at the estimated cost of $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraphs 179b.   As to subparagraph 179c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive a surgical injection procedure at Memorial MRI and deny all other allegations in subparagraph 179c.   As to subparagraph 179d, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive arthroscopic surgery on her right shoulder, and that the estimated cost for the procedure would be $27,200.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 179d.

181.   The Donovan Defendants deny the allegation in the first sentence of paragraph 180 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 180 of the Amended Complaint.   The Donovan Defendants deny the allegations in the second sentence of paragraph 180.

182.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 181 of the Amended

Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 181.

183.     The Donovan Defendants admit the allegations in the first sentence of paragraph 182 of the Amended Complaint.  The Donovan Defendants admit the allegation in the second sentence of paragraph 182 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Clayton; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 182.  The Donovan Defendants admit the third sentence of paragraph 182.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 182.  As to subparagraph 182a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future at the estimated cost of $2,500.00 and deny all other allegations in subparagraph 182a.  As to subparagraph 182b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive a surgical injection procedure in the future at the estimated cost of  $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 182b.  As to subparagraph 182c, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for a surgical injection procedure at Memorial MRI and the procedure was conducted by Dr. Dent, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 182c.  As to subparagraph 182d of the Amended Complaint, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive a lumbar discogram L3-S1 and probable lumbar disc surgery L4-5, L5-S1, and that the combined estimated cost for the procedures would be $51,500.00, including hospital and

surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 182d.

184.    The Donovan Defendants deny the allegation in the first sentence of paragraph 183 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 183.   The Donovan Defendants deny the allegations in the second sentence of paragraph 183.

185.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 184 of the Amended Complaint.   The Donovan Defendants deny the allegations in the second sentence of paragraph 184.

186.    The Donovan Defendants admit the allegations in the first sentence of paragraph 185 of the Amended Complaint.   The Donovan Defendants admit the allegation in the second sentence of paragraph 185 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 185.   The Donovan Defendants admit the third sentence of paragraph 185 of the Amended Complaint.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 185.   As to subparagraph 185a, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for diagnostic testing on his right knee at Memorial MRI; the testing was conducted at Memorial MRI and evaluated by Dr. Farolan, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 185a.   As to subparagraph 185b,

the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and deny all other allegations in subparagraph 185b.  As to subparagraph 185c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive a surgical injection procedure in the future and deny all other allegations in subparagraph 185c.  As to subparagraph 185d, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for a surgical injection procedure at Memorial MRI and a surgical injection procedure was conducted by Dr. Vidal, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 185d.  As to subparagraph 185e of the Amended Complaint, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo arthroscopic surgery on his right knee with ACL ligament reconstruction, and that the estimated cost for the procedures would be $40,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 185e.

187.    The Donovan Defendants deny the allegation in the first sentence of paragraph 186 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 186.  The Donovan Defendants deny the allegations in the second sentence of paragraph 186.

188.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny all the allegations in the first sentence of paragraph 187 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 187.

189.     The Donovan Defendants admit the allegations in the first sentence of paragraph 188 of the Amended Complaint.  The Donovan Defendants admit the allegation in the second sentence of paragraph 188 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 188.  The Donovan Defendants admit the third sentence of paragraph 188.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 188.  As to subparagraph 188a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00; the Donovan Defendants deny all other allegations in subparagraph 188a.  As to subparagraph 188b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue receive neurological testing by Dr. Kahkeshani, and the Donovan Defendants deny all other allegations in subparagraph 188b.  As to subparagraph 188c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgery rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 188c.  As to subparagraph 188d, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for a surgical injection procedure at Memorial MRI and a surgical injection procedure was conducted by Dr. Vidal, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 188d.  As to subparagraph 188e, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a cervical discogram C3-T1 and ACDF C4-5, C6-7, and that the estimated combined cost for the procedures would be $68,500.00, including hospital and

surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 188e.

190.    The Donovan Defendants deny the allegation in the first sentence of paragraph 189 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 189.   The Donovan Defendants deny the allegations in the second sentence of paragraph 189.

191.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 190 of the Amended Complaint.   The Donovan Defendants deny the allegations in the second sentence of paragraph 190.

192.    The Donovan Defendants deny the allegation in paragraph 191 of the Amended Complaint that the patient at issue was involved in an automobile collision on February 21, 2007, and the Donovan Defendants admit all other allegations in the first sentence of paragraph 191. The Donovan Defendants admit the allegation in the second sentence of paragraph 191 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 191.   The Donovan Defendants admit the third sentence of paragraph 191.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 191.  As to subparagraph 191a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future, and the Donovan Defendants deny all other allegations in subparagraph 191a.  As to

subparagraph 191b, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for neurological testing by Dr. Kahkeshani, and the Donovan Defendants deny all other allegations in subparagraph 191b.  As to subparagraph 191c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future, and the Donovan Defendants deny all other allegations in subparagraph 191c.  As to subparagraph 191d, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for a surgical injection procedure at Memorial MRI and a surgical injection procedure was conducted by Dr. Dent, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 191d.

193.   The Donovan Defendants deny the allegation in the first sentence of paragraph 192 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 192.  The Donovan Defendants deny the allegations in the second sentence of paragraph 192.

194.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 193 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 193.

195.   The Donovan Defendants admit the allegations in the first sentence of paragraph 194 of the Amended Complaint.  The Donovan Defendants admit the allegation in the second sentence of paragraph 194 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of

paragraph 194.   The Donovan Defendants admit the third sentence of paragraph 194.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 194.   As to subparagraph 194a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00; the Donovan Defendants deny all other allegations in subparagraph 194a.   As to subparagraph 194b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgery rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 194b.

196.   The Donovan Defendants deny the allegation in the first sentence of paragraph 195 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 195.   The Donovan Defendants deny the allegations in the second sentence of paragraph 195.

197.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 196 of the Amended Complaint.   The Donovan Defendants deny the allegations in the second sentence of paragraph 196.

198.   The Donovan Defendants admit the allegations in the first sentence of paragraph 197 of the Amended Complaint.   The Donovan Defendants admit the allegation in the second sentence of paragraph 197 of the Amended Complaint that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan

Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 197.  The Donovan Defendants admit the third sentence of paragraph 197.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 197.  As to subparagraph 197a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00; the Donovan Defendants deny all other allegations in subparagraph 197a.  As to subparagraph 197b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 197b. As to subparagraph 197c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a cervical and lumbar myelogram and ACDF C5-6, C6-7 surgery and that the combined estimated cost for the procedures would be $68,500.00, including hospital and surgeon's charges, post-surgical rehabilitation, and physical therapy; and the Donovan Defendants deny all other allegations in subparagraph 197c.

199.    The Donovan Defendants deny the allegation in the first sentence of paragraph 198 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 198.  The Donovan Defendants deny the allegations in the second sentence of paragraph 198.

200.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 199 of the Amended

Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 199.

201.    The Donovan Defendants admit the allegations in the first sentence of paragraph 200 of the Amended Complaint.  The Donovan Defendants admit the allegation in the second sentence of paragraph 200 of the Amended Complaint that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 200.  The Donovan Defendants admit the third sentence of paragraph 200.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 200.  As to subparagraph 200a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00; the Donovan Defendants deny all other allegations in subparagraph 200a.  As to subparagraph 200b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 200b. As to subparagraph 200c, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for a surgical injection at Memorial MRI and Dr. Dent conducted the procedure and issued a report; and the Donovan Defendants deny all other allegations in subparagraph 200c.  As to subparagraph 200d, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a lumbar discogram and 360 degrees lumbar spine fusion L304, L4-5, L5-S1 surgery and that the combined estimated cost for

the procedures would be $78,693.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 200d.

202.    The Donovan Defendants deny the allegation in the first sentence of paragraph 201 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 201.   The Donovan Defendants deny the allegations in the second sentence of paragraph 201.

203.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 202 of the Amended Complaint.   The Donovan Defendants deny the allegations in the second sentence of paragraph 202.

204.    The Donovan Defendants admit the allegations in the first sentence of paragraph 203 of the Amended Complaint.   The Donovan Defendants admit the allegation in the second sentence of paragraph 203 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 203.   The Donovan Defendants admit the third sentence of paragraph 203.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 203.    As to subparagraph 203a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo arthroscopic surgery on her left knee and that the estimated cost for the procedure would be $25,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 203a.

205.    The Donovan Defendants deny the allegation in the first sentence of paragraph 204 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 204.   The Donovan Defendants deny the allegations in the second sentence of paragraph 204.

206.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny all the allegations in the first sentence of paragraph 205 of the Amended Complaint.   The Donovan Defendants deny the allegations in the second sentence of paragraph 205.

207.    The Donovan Defendants admit the allegations in the first sentence of paragraph 206 of the Amended Complaint.   The Donovan Defendants admit the allegation in the second sentence of paragraph 206 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Clayton; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 206.   The Donovan Defendants admit the third sentence of paragraph 206 of the Amended Complaint.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 206.   As to subparagraph 206a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $2,500.00; the Donovan Defendants deny all other allegations in subparagraph 206a.   As to subparagraph 206b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's

charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 206b. As to subparagraph 206c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo arthroscopic surgery of her right shoulder and probable surgery, C506, and that the combined estimated cost for the procedures would be $102,735.00, including hospital and surgeon's charges, and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 206c.

208.    The Donovan Defendants deny the allegation in the first sentence of paragraph 207 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 207.  The Donovan Defendants deny the allegations in the second sentence of paragraph 207.

209.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 208 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 208.

210.    The Donovan Defendants admit the allegations in the first sentence of paragraph 209 of the Amended Complaint.  The Donovan Defendants admit the allegation in the second sentence of paragraph 209 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 209.  The Donovan Defendants admit the third sentence of paragraph 209.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 209.  As to

subparagraph 209a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00; the Donovan Defendants deny all other allegations in subparagraph 209a. As to subparagraph 209b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo surgical injection procedures in the future and that the estimated cost of the procedures was $29,000.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 209b. As to subparagraph 209c, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for surgical injection procedures at Memorial MRI; that the patient at issue received surgical injection procedures at Memorial MRI, conducted by Dr. Vidal, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 209c. As to subparagraph 209d, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo cervical spine surgery, C4-5, C-5-6, and partial discectomy, L5-S1, right and left, and that the combined estimated cost for the procedures would be $88,138.00, including hospital and surgeon's charges, and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 209d.

211. The Donovan Defendants deny the allegation in the first sentence of paragraph 210 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 210. The Donovan Defendants deny the allegations in the second sentence of paragraph 210.

212. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 211 of the Amended

Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 211.

213.    The Donovan Defendants admit the allegations in the first sentence of paragraph 212 of the Amended Complaint.  The Donovan Defendants admit the allegation in the second sentence of paragraph 212 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 212.  The Donovan Defendants admit the third sentence of paragraph 212.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 212.  As to subparagraph 212a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo arthroscopic surgery to his left shoulder and that the estimated cost for this procedure would be $27,200.00, including hospital and surgeon's charges, and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 212a.

214.    The Donovan Defendants deny the allegation in the first sentence of paragraph 213 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 213.  The Donovan Defendants deny the allegations in the second sentence of paragraph 213.

215.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 214 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 214.

216.    The Donovan Defendants admit the allegations in the first sentence of paragraph 215 of the Amended Complaint.  The Donovan Defendants admit the allegation in the second sentence of paragraph 215 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 215.  The Donovan Defendants admit the third sentence of paragraph 215.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 215.   As to subparagraph 215a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $2,500.00; the Donovan Defendants deny all other allegations in subparagraph 215a.   As to subparagraph 215b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo surgical injection procedures in the future and that the estimated cost of the procedures was $14.500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 215b. As to subparagraph 215c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a partial discectomy L5-S1 left and right, and that the combined estimated cost for the procedures would be $39,500.00, including hospital and surgeon's charges, and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 215c.

217.    The Donovan Defendants deny the allegation in the first sentence of paragraph 216 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations

in the first sentence of paragraph 216. The Donovan Defendants deny the allegations in the second sentence of paragraph 216.

218. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 217 of the Amended Complaint. The Donovan Defendants deny the allegations in the second sentence of paragraph 217.

219. The Donovan Defendants admit the allegations in the first sentence of paragraph 218 of the Amended Complaint. The Donovan Defendants admit the allegation in the second sentence of paragraph 218 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 218. The Donovan Defendants admit the third sentence of paragraph 218. The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 218. As to subparagraph 218a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00; the Donovan Defendants deny all other allegations in subparagraph 218a. As to subparagraph 218b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedures was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 218b. As to subparagraph 218c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo probable partial discectomy L5-S1, right and left, and that the estimated cost for the procedure would be $31,638.00, including hospital and surgeon's charges, and post-

surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 218c.

220.    The Donovan Defendants deny the allegation in the first sentence of paragraph 219 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 219 and all allegations in the second sentence of paragraph 219. The Donovan Defendants deny the allegations in the third sentence of paragraph 219.

221.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 220 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 220.

222.    The Donovan Defendants admit the allegations in the first sentence of paragraph 221 of the Amended Complaint.  The Donovan Defendants admit the allegation in the second sentence of paragraph 221 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 221.  The Donovan Defendants admit the third sentence of paragraph 221.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 221.  As to subparagraph 221a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00; the Donovan Defendants deny all other allegations in subparagraph 221a.  As to subparagraph 221b, the Donovan Defendants admit that Dr. Donovan recommended that the

patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedures was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 221b. As to subparagraph 221c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a probable cervical spine C3-4 procedure, and that the estimated cost for the procedure would be $56,500.00, including hospital and surgeon's charges, and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 221c.

223.   The Donovan Defendants deny the allegation in the first sentence of paragraph 222 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 222 and all the allegations in the second sentence of paragraph 222.  The Donovan Defendants deny the allegations in the third sentence of paragraph 222.

224.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 223 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 223.

225.   The Donovan Defendants admit the allegations in the first sentence of paragraph 224 of the Amended Complaint.  The Donovan Defendants admit the allegation in the second sentence of paragraph 224 of the Amended Complaint that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 224.  The Donovan Defendants admit the third sentence of paragraph 224.  The Donovan Defendants deny that Dr. Donovan/Northshore made

"unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 224.  As to subparagraph 224a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00; the Donovan Defendants deny all other allegations in subparagraph 224a.  As to subparagraph 224b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedures was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 224b. As to subparagraph 224c, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for surgical injection procedures at Memorial MRI; that the patient at issue received surgical injection procedures at Memorial MRI, conducted by Dr. Vidal, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 224c.  As to subparagraph 224d, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo TLIP L3-4, L4-5 surgery, and that the estimated cost for the procedure would be $128,500.00, including hospital and surgeon's charges, and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 224d.

226.   The Donovan Defendants deny the allegation in the first sentence of paragraph 225 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 225.  The Donovan Defendants deny the allegations in the second sentence of paragraph 225.

227.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 226 of the Amended

Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 226.

228.    The Donovan Defendants admit the allegations in the first sentence of paragraph 227 of the Amended Complaint. The Donovan Defendants admit the second sentence of paragraph 227.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the third sentence of paragraph 227.  As to subparagraph 227a, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan, who issued a report, but deny all other allegations in subparagraph 227a.  As to subparagraph 227b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00; the Donovan Defendants deny all other allegations in subparagraph 227a.  As to subparagraph 227c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedures was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 227c. As to subparagraph 227d, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for surgical injection procedures at Memorial MRI; that the patient at issue received surgical injection procedures at Memorial MRI, conducted by Dr. Dent, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 227d.  As to subparagraph 227e, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a cervical discogram, and that the estimated cost for the procedure would be $12,000.00, including hospital and surgeon's charges, and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 227e.

229.    The Donovan Defendants deny the allegation in the first sentence of paragraph 228 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 228.   The Donovan Defendants deny the allegations in the second sentence of paragraph 228.

230.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 229 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 229.

231.    The Donovan Defendants admit the allegations in the first sentence of paragraph 230 of the Amended Complaint. The Donovan Defendants admit the allegation in the second sentence of paragraph 230 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 230.   The Donovan Defendants admit the third sentence of paragraph 230.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 230.   As to subparagraph 230a, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for diagnostic testing at Memorial MRI; that the patient at issue received diagnostic testing at Memorial MRI, evaluated by Dr. Farolan, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 230a.   As to subparagraph 230b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future, and the Donovan Defendants deny all other allegations in

subparagraph 230b.  As to subparagraph 230c, the Donovan Defendants admit that that Dr. Donovan referred the patient at issue for neurodiagnostic testing by Dr. Kahkeshani; that the patient at issue received neurodiagnostic testing by Dr. Kahkeshani, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 230c. As to subparagraph 230d, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo ACDF C3-C6 and PLIF L4-5, L5-S1, procedures and arthroscopic surgery to his right shoulder, and that the combined estimated cost for these procedures would be $160,200.00, including hospital and surgeon's charges, post-surgical rehabilitation, and physical therapy; and the Donovan Defendants deny all other allegations in subparagraph 230d.

232.    The Donovan Defendants deny the allegation in the first sentence of paragraph 231 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 231.  The Donovan Defendants deny the allegations in the second sentence of paragraph 231.

233.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 232 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 232.

234.    The Donovan Defendants admit the allegations in the first sentence of paragraph 233 of the Amended Complaint. The Donovan Defendants admit the allegation in the second sentence of paragraph 233 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of

paragraph 233.   The Donovan Defendants admit the third sentence of paragraph 233.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 233.   As to subparagraph 233a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future, and the Donovan Defendants deny all other allegations in subparagraph 233a.   As to subparagraph 233b, the Donovan Defendants admit that that Dr. Donovan referred the patient at issue for neurodiagnostic testing by Dr. Kahkeshani; that the patient at issue received neurodiagnostic testing by Dr. Kahkeshani, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 233b. As to subparagraph 233c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future, and the Donovan Defendants deny all other allegations in subparagraph 233c.   As to subparagraph 233d, the Donovan Defendants admit that that Dr. Donovan referred the patient at issue for surgical injection procedures at Memorial MRI; that the patient at issue received surgical injection procedures at Memorial MRI, conducted by Dr. Vidal, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 233d.

235.   The Donovan Defendants deny the allegation in the first sentence of paragraph 234 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 234.   The Donovan Defendants deny the allegations in the second sentence of paragraph 234.

236.   The Donovan Defendants admit the allegations in the first sentence of paragraph 235 of the Amended Complaint. The Donovan Defendants admit the allegation in the second

sentence of paragraph 235 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 235.  The Donovan Defendants admit the third sentence of paragraph 235.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 235.  As to subparagraph 235a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00, and the Donovan Defendants deny all other allegations in subparagraph 235a.  As to subparagraph 235b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 235b.  As to subparagraph 235c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo percutaneous disc decompression L4-5, if the patient did not improve with epidural steroid injection, and that the estimated cost for the procedure would be $27,500.00, including facility fee, surgeon's charge, and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 235c.

237.    The Donovan Defendants deny the allegation in the first sentence of paragraph 236 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 236.  The Donovan Defendants deny the allegations in the second sentence of paragraph 236.

238.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 237 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 237.

239.     The Donovan Defendants admit the allegations in the first sentence of paragraph 238 of the Amended Complaint. The Donovan Defendants admit the allegation in the second sentence of paragraph 238 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 238.   The Donovan Defendants admit the third sentence of paragraph 238.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 238.   As to subparagraph 238a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00, and the Donovan Defendants deny all other allegations in subparagraph 238a.  As to subparagraph 238b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 238b.  As to subparagraph 238c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo ACDF C5-6 and that the estimated cost for the procedure would be $84,500.00, including hospital and surgeon's charges and physical therapy; and the Donovan Defendants deny all other allegations in subparagraph 238c.

240.    The Donovan Defendants deny the allegation in the first sentence of paragraph 239 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 239.   The Donovan Defendants deny the allegations in the second sentence of paragraph 239.

241.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 240 of the Amended Complaint.   The Donovan Defendants deny the allegations in the second sentence of paragraph 240.

242.    The Donovan Defendants admit the allegations in the first sentence of paragraph 241 of the Amended Complaint. The Donovan Defendants admit the allegation in the second sentence of paragraph 241 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 241.   The Donovan Defendants admit the third sentence of paragraph 241.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 241.   As to subparagraph 241a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00, and the Donovan Defendants deny all other allegations in subparagraph 241a.   As to subparagraph 241b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future; and the Donovan Defendants deny all other allegations in subparagraph 241b.   As to subparagraph 241c, the Donovan

Defendants admit that Dr. Donovan referred the patient at issue for surgical injection procedures; that the patient at issue received surgical injection procedures at Northshore, conducted by Dr. Vidal, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 241c. As to subparagraph 241d, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo HNP C5-6 and HNP L4-5 surgery and that the combined estimated cost for the procedures would be $123,138.00, including hospital and surgeon's charges, post-surgical rehabilitation, and physical therapy; and the Donovan Defendants deny all other allegations in subparagraph 241c.

243.     The Donovan Defendants deny the allegation in the first sentence of paragraph 242 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 242.  The Donovan Defendants deny the allegations in the second sentence of paragraph 242.

244.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 243 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 243.

245.     The Donovan Defendants admit the allegations in the first sentence of paragraph 244 of the Amended Complaint. The Donovan Defendants admit the allegation in the second sentence of paragraph 244 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 244.  The Donovan Defendants admit the third sentence of paragraph 244.  The

Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 244. As to subparagraph 244a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00, and the Donovan Defendants deny all other allegations in subparagraph 244a. As to subparagraph 244b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 244b. As to subparagraph 244c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo ACDF C5-6 and percutaneous disc decompression L4-5, L5-S1 procedures and that the combined estimated cost for the procedures would be $114,500.00, including hospital and surgeon's charges, facility fee, post-surgical rehabilitation, and physical therapy; and the Donovan Defendants deny all other allegations in subparagraph 244c.

246.    The Donovan Defendants deny the allegation in the first sentence of paragraph 245 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 245. The Donovan Defendants deny the allegations in the second sentence of paragraph 245.

247.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 246 of the Amended Complaint. The Donovan Defendants deny the allegations in the second sentence of paragraph 246.

248.     The Donovan Defendants admit the allegations in the first sentence of paragraph 247 of the Amended Complaint. The Donovan Defendants admit the allegation in the second sentence of paragraph 247 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 247.   The Donovan Defendants admit the third sentence of paragraph 247.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 247.   As to subparagraph 247a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00, and the Donovan Defendants deny all other allegations in subparagraph 247a.   As to subparagraph 247b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 247b.   As to subparagraph 247c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo probable ACDF C4-5, C5-6, C6-7 and that the estimated cost for the procedure would be $115,500.00, including hospital and surgeon's charges and physical therapy; and the Donovan Defendants deny all other allegations in subparagraph 247c.

249.     The Donovan Defendants deny the allegation in the first sentence of paragraph 248 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations

in the first sentence of paragraph 248.  The Donovan Defendants deny the allegations in the second sentence of paragraph 248.

250.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 249 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 249.

251.    The Donovan Defendants admit the allegations in the first sentence of paragraph 250 of the Amended Complaint. The Donovan Defendants admit the allegation in the second sentence of paragraph 250 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 250.  The Donovan Defendants admit the third sentence of paragraph 250.  The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 250.  As to subparagraph 250a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00, and the Donovan Defendants deny all other allegations in subparagraph 250a.  As to subparagraph 250b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 250b.  As to subparagraph 250c, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for surgical injection procedures at Memorial MRI; that the patient at issue received surgical injection procedures at Northshore, conducted by Dr. Vidal, who issued a report; and the

Donovan Defendants deny all other allegations in subparagraph 250c of the Amended Complaint.   As to subparagraph 250d, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo probable HNP C5-6, C6-7 and that the estimated cost for the procedure would be $100,500.00, including hospital and surgeon's charges and physical therapy; and the Donovan Defendants deny all other allegations in subparagraph 250d.

252.   The Donovan Defendants deny the allegation in the first sentence of paragraph 251 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 251.   The Donovan Defendants deny the allegations in the second sentence of paragraph 251.

253.   The Donovan Defendants are without sufficient knowledge or information to either admit or deny all the allegations in the first sentence of paragraph 252 of the Amended Complaint.   The Donovan Defendants deny the allegations in the second sentence of paragraph 252.

254.   The Donovan Defendants admit the allegations in the first sentence of paragraph 253 of the Amended Complaint. The Donovan Defendants admit the allegation in the second sentence of paragraph 253 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 253.   The Donovan Defendants admit the third sentence of paragraph 253.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 253.   As to subparagraph 253a, the Donovan Defendants admit that Dr. Donovan recommended that the

patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00, and the Donovan Defendants deny all other allegations in subparagraph 253a.  As to subparagraph 253b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 253b.  As to subparagraph 253c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo probable partial discectomy L5-S1 and that the estimated cost for the procedure would be $38,638.00, including hospital and surgeon's charges and physical therapy; and the Donovan Defendants deny all other allegations in subparagraph 253c.

255.    The Donovan Defendants deny the allegation in the first sentence of paragraph 254 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 254.  The Donovan Defendants deny the allegations in the second sentence of paragraph 254 of the Amended Complaint.

256.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny all the allegations in the first sentence of paragraph 255 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 255.

257.    The Donovan Defendants admit the allegations in the first sentence of paragraph 256 of the Amended Complaint. The Donovan Defendants admit the allegation in the second sentence of paragraph 256 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient

knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 256. The Donovan Defendants admit the third sentence of paragraph 256. The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 256. As to subparagraph 256a, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for diagnostic testing at Memorial MRI; that the patient at issue received diagnostic testing at Memorial MRI, evaluated by Dr. Farolan, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 256a. As to subparagraph 256b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00, and the Donovan Defendants deny all other allegations in subparagraph 256b. As to subparagraph 256c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 256c. As to subparagraph 256d, the Donovan Defendants admit that Dr. Donovan referred the patient at issue for a surgical injection procedure at Memorial MRI; that the patient at issue received a surgical injection procedure at Memorial MRI, conducted by Dr. Dent, who issued a report; and the Donovan Defendants deny all other allegations in subparagraph 256d. As to subparagraph 256e, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo partial discectomy L5-S1 right and that the estimated cost for the procedure would be $26,069.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 256e.

258.     The Donovan Defendants deny the allegation in the first sentence of paragraph 257 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 257.   The Donovan Defendants deny the allegations in the second sentence of paragraph 257.

259.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 258 of the Amended Complaint.   The Donovan Defendants deny the allegations in the second sentence of paragraph 258.

260.     The Donovan Defendants admit the allegations in the first sentence of paragraph 259 of the Amended Complaint. The Donovan Defendants admit the allegation in the second sentence of paragraph 259 that the patient at issue received diagnostic testing at Memorial MRI, which was evaluated by Dr. Farolan; and the Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in the 2nd sentence of paragraph 259.   The Donovan Defendants admit the third sentence of paragraph 259.   The Donovan Defendants deny that Dr. Donovan/Northshore made "unnecessary and fraudulent findings and/or referrals," as alleged in the fourth sentence of paragraph 259.   As to subparagraph 259a, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo neurodiagnostic testing in the future and that the estimated cost was $4,700.00, and the Donovan Defendants deny all other allegations in subparagraph 259a.   As to subparagraph 259b, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo a surgical injection procedure in the future and that the estimated cost of the procedure was $14,500.00, including hospital and surgeon's charges and post-surgical

rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 259b.  As to subparagraph 259c, the Donovan Defendants admit that Dr. Donovan recommended that the patient at issue undergo partial discectomy L5-S1, right and left, and that the estimated cost for the procedure would be $31,638.00, including hospital and surgeon's charges and post-surgical rehabilitation; and the Donovan Defendants deny all other allegations in subparagraph 259c.

261.    The Donovan Defendants deny the allegation in the first sentence of paragraph 260 of the Amended Complaint that documents were provided by "the Enterprise and its associates substantiating the unnecessary pattern of treatment, referrals, and recommendations" and are without sufficient knowledge or information to either admit or deny all other allegations in the first sentence of paragraph 260.  The Donovan Defendants deny the allegations in the second sentence of paragraph 260.

262.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the first sentence of paragraph 261 of the Amended Complaint.  The Donovan Defendants deny the allegations in the second sentence of paragraph 261.

263.    The Donovan Defendants deny the allegations in paragraph 262 of the Amended Complaint.

264.    The Donovan Defendants deny the allegations in paragraph 263 of the Amended Complaint.

265.    Citations to purported legal authority in paragraph 264 of the Amended Complaint require no response.  The Donovan Defendants deny all other allegations in paragraph 264.

266.    The Donovan Defendants admit the allegations in paragraph 265 of the Amended Complaint.

267.    The Donovan Defendants admit the allegations in paragraph 266 of the Amended Complaint.

268.    The Donovan Defendants would show that, pursuant to 18 U.S.C. § 1961(1)(B), "racketeering activity" includes acts that are indictable under 18 U.S.C. § 1341, relating to mail fraud.  Subject to that clarification, the Donovan Defendants admit the allegation in the first sentence of paragraph 267 of the Amended Complaint.  All other citations to purported legal authority in paragraph 267 require no response.  The Donovan Defendants admit the allegations in paragraph 267 that the events described in paragraphs 170 through 261 of the Amended Complaint occurred from 2006 through 2010, after the effective date of Chapter 96, and within ten years of each other, and the Donovan Defendants deny that such events are "predicate acts of mail fraud" pursuant to Sections 1341 and 1961(1)(B). The Donovan Defendants deny all other allegations in paragraph 267.

269.    Citations to purported legal authority require no response.  The Donovan Defendants deny all other allegations in paragraph 268 of the Amended Complaint.

270.    The Donovan Defendants would show that, pursuant to the Texas Medical Practices Act, Tex. Occ. Code Ann., Sections 159.005 and 159.006 (West 2001), the Donovan Defendants are required to provide copies of requested billing or medical records, or a summary or narrative of requested billing or medical records, to patients and their designees upon the patient's written consent for release of confidential information, regardless of whether the Donovan Defendants are treating the consenting patient under a letter of protection.  Subject to this clarification, the Donovan Defendants admit the allegation in paragraph 269 of the Amended Complaint that the Donovan Defendants provided patient medical records to the law offices. The Donovan Defendants deny all other allegations in paragraph 269.

271.   The Donovan Defendants admit the allegation in paragraph 270 of the Amended Complaint that Northshore is "an association." The Donovan Defendants deny the allegation in paragraph 270 that the "members of the association in fact enterprises" are Northshore and Memorial MRI LP.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 270.

272.   The Donovan Defendants deny the allegations in paragraph 271 of the Amended Complaint.

273.   The Donovan Defendants admit the allegations in paragraph 272 of the Amended Complaint that Northshore is a "professional clinic operations entity formed in 1997" and that, after 2005, Dr. Donovan's practice saw a reduced number of worker's compensation patients and an increased number of accident patients, some of which were treated under letters of protection. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 272 that Memorial MRI LP "is a health care facility operations entity formed in 2001," that that defendant Tran arrived at Memorial MRI at or after late 2005, and that Talamas was involved as a liaison between the Memorial MRI facility and the Stern Firm. The Donovan Defendants deny all other allegations in paragraph 272.

274.   The Donovan Defendants admit the allegation in paragraph 273 of the Amended Complaint that Northshore and Memorial MRI "were not contemporaneously formed with the intent that they combine to engage in a pattern of racketeering activity."   The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegation in paragraph 273 that Northshore and Memorial MRI "formed at different dates, four years apart."  The Donovan Defendants deny all other allegations in paragraph 273.

275.   The Donovan Defendants admit the allegations in paragraph 274 of the Amended Complaint that Northshore referred patients to Memorial MRI facilities for diagnostic testing and

other procedures and, throughout the period at issue, Northshore referred automobile accident patients not at issue, as well as other patients, to Memorial MRI for testing and other procedures conducted or evaluated by, among others, Drs. Clayton, Farolan, Vidal, and Dent.  The Donovan Defendants deny all other allegations in paragraph 274.

276.    The Donovan Defendants deny the allegations in paragraph 275 of the Amended Complaint.

277.    The Donovan Defendants deny the allegations in paragraph 276 of the Amended Complaint, including footnote 21. Citations to purported legal authority require no response.

278.    The Donovan Defendants deny the allegations in paragraph 277 of the Amended Complaint.

279.    The Donovan Defendants admit the allegations in paragraph 278 of the Amended Complaint that the Donovan Defendants owned, operated, and participated in the management of the "Northshore Orthopedics" medical office; the Donovan Defendants permitted Dr. Kahkeshani to perform services at Northshore; Northshore paid Dr. Kahkeshani for services performed by him at Northshore; the Donovan Defendants referred patients to Memorial MRI for diagnostic testing and surgical injection procedures; Northshore provided patient records from Northshore's patient files to the law offices at issue; and the Donovan Defendants received payment for their services to the patients at issue.  The Donovan Defendants deny all other allegations in paragraph 278 of the Amended Complaint.

280.    The Donovan Defendants deny the allegations in paragraph 279 of the Amended Complaint as they relate to the Donovan Defendants.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 279 as they relate to defendants other than the Donovan Defendants.

281.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 280.

282.    The Donovan Defendants deny the allegations in paragraph 281 of the Amended Complaint.

283.    The Donovan Defendants deny the allegations in paragraph 282 of the Amended Complaint and incorporate by reference their responses to paragraphs 144 – 168.

284.    The Donovan Defendants admit the allegation in paragraph 283 of the Amended Complaint that, after 2005, Dr. Donovan's practice saw a reduced number of worker's compensation patients and an increased number of accident patients, some of which were treated under letters of protection.  The Donovan Defendants deny the allegations in paragraph 283 that Memorial MRI LP is an "enterprise" as that term is defined in 18 U.S.C. § 1961(4); deny that a pattern of racketeering activity commenced around late 2005; and deny that Talamas was involved as a liaison between Northshore's office and the Memorial MRI facility and between Northshore's office and the Stern Firm. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 283.

285.    The Donovan Defendants deny the allegations in paragraph 284 of the Amended Complaint.

286.    The Donovan Defendants deny the allegations in paragraph 285 of the Amended Complaint.

287.    The Donovan Defendants deny the allegations in paragraph 286 of the Amended Complaint.

288.    The Donovan Defendants deny the allegations in paragraph 287 of the Amended Complaint.

289.    The Donovan Defendants deny the allegations in paragraph 288 of the Amended Complaint.

290.    The Donovan Defendants deny the allegations in paragraph 289 of the Amended Complaint.

291.    The Donovan Defendants deny the allegation in paragraph 290 of the Amended Complaint that "the first Enterprise alleged is an association in fact enterprise."  All other allegations in paragraph 290 of the Amended Complaint are legal conclusions that the Donovan Defendants can neither admit nor deny. Citations to purported legal authority require no response.

292.    The Donovan Defendants admit the allegation in paragraph 291 of the Amended Complaint that Dr. Donovan is a director and officer of Northshore. The Donovan Defendants deny the allegations in paragraph 291 that Northshore is a "component member" of the alleged association-in-fact enterprise and that Northshore and Memorial MRI are an association-in-fact enterprise. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 291.

293.    The Donovan Defendants deny the allegations in paragraph 292 of the Amended Complaint that the alleged "Center Enterprise" consists of Memorial MRI LP. The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 292.

294.    The Donovan Defendants deny the allegations in paragraph 293 of the Amended Complaint, including footnote 22.  Citations to purported legal authority require no response.

295.    The Donovan Defendants deny the allegations in paragraph 294 of the Amended Complaint.

296.     The Donovan Defendants admit the allegations in paragraph 295 of the Amended Complaint that the defendants named in paragraph 295 are not an "association-in-fact enterprise" and are separate from any alleged enterprise.   The Donovan Defendants deny all other allegations in paragraph 295.

297.     The Donovan Defendants admit the allegations in paragraph 296 of the Amended Complaint that the defendants named in paragraph 296 are not an enterprise and are separate from any alleged enterprise.  The Donovan Defendants deny the allegations in paragraph 296 that there is an "association-in-fact enterprise" and that Northshore and Memorial MRI LP are "members" of the alleged "association-in-fact enterprise."  All other allegations in paragraph 296 are legal conclusions that the Donovan Defendants can neither admit nor deny. Citations to purported legal authority require no response.

298.     The Donovan Defendants admit the allegations in paragraph 297 of the Amended Complaint that the defendants named in paragraph 297 are not an "association-in-fact" enterprise and are separate from any alleged "association-in-fact" enterprise.   The Donovan Defendants deny all other allegations in paragraph 297 of the Amended Complaint.

299.     The Donovan Defendants admit the allegations in paragraph 298 of the Amended Complaint.

300.     The Donovan Defendants admit the allegations in paragraph 299 of the Amended Complaint that "[n]o Defendants is alleged to be the Enterprise."  The Donovan Defendants deny all other allegations in paragraph 299 of the Amended Complaint

301.     The Donovan Defendants admit the allegations in paragraph 300 of the Amended Complaint.

302.     The Donovan Defendants deny the allegations in paragraph 301 of the Amended Complaint.

303.    The Donovan Defendants admit the allegations in paragraph 302 of the Amended Complaint that Dr. Donovan formed Northshore in April 1997 and that "the entities were not contemporaneously formed with the intent that they combine to engage in a pattern of racketeering activity."    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 302 that Northshore and Memorial MRI "formed at different dates, several years apart" and that "in May 2001 Hilliard and/or Patel formed Memorial MRI & Diagnostic Center, L.L.L.P. (after March 2009, Memorial MRI & Diagnostic center, L.P.)."    The Donovan Defendants deny all other allegations in paragraph 302 of the Amended Complaint.

304.    The Donovan Defendants admit the allegation in paragraph 303 of the Amended Complaint that, after 2005, Dr. Donovan's practice saw a reduced number of worker's compensation patients and an increased number of accident patients, some of which were treated under letters of protection from attorneys, including the Stern Firm. The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 303 that defendant Tran arrived at the Memorial MRI entities as vice president (September 2004 or 205) and instituted "directorships" or "consultant" relationships at Memorial MRI following her arrival.    The Donovan Defendants deny all other allegations in paragraph 303 of the Amended Complaint.

305.    The Donovan Defendants deny the allegations in paragraph 304 of the Amended Complaint that any patients referred by Dr. Donovan and Northshore were part of a "fraudulent 'buildup' scheme" and that there were any "predicate acts" that are the subject of this lawsuit or in regard to the requested damages.    The Donovan Defendants admit all other allegations in paragraph 304.

306.     The Donovan Defendants deny the allegations in paragraph 305 of the Amended Complaint.

307.     The Defendants are without sufficient knowledge or information to either admit or deny the allegations in the second sentence of paragraph 306 of the Amended Complaint, which purports to describe the "regular business of an association-in-fact enterprise concerning healthcare."  The Donovan Defendants deny all other allegations in paragraph 306, set forth in the first and third sentences of paragraph 306.

308.     The Donovan Defendants deny the allegations in paragraph 307 of the Amended Complaint.

309.     The Donovan Defendants deny the allegations in the first and second sentences of paragraph 308.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in the third sentence of paragraph 308.

310.     The Donovan Defendants deny the allegations in paragraph 309 of the Amended Complaint.

311.     The Donovan Defendants deny the allegations in paragraph 310 of the Amended Complaint.

312.     The Donovan Defendants admit the allegations in paragraph 311 of the Amended Complaint.

313.     The Donovan Defendants admit the allegations in paragraph 312 of the Amended Complaint.

314.     The Donovan Defendants admit the allegation in paragraph 313 of the Amended Complaint that Plaintiffs allege violation of 18 U.S.C. Section 1962(c).  The Donovan Defendants deny that the Donovan Defendants violated Section 1962(c) and deny that they have any liability pursuant to Section 1962(c).

315.    The Donovan Defendants admit the allegations in the second sentence of paragraph 314 of the Amended Complaint.  The Donovan Defendants deny all other allegations in paragraph 314 of the Amended Complaint, including footnote 23. Citations to purported legal authority require no response.

316.    The Donovan Defendants admit the allegations in the second sentence of paragraph 315 of the Amended Complaint.  The Donovan Defendants deny all other allegations in paragraph 315 of the Amended Complaint.

317.    The Donovan Defendants deny the allegations in paragraph 316 of the Amended Complaint.

318.    The Donovan Defendants deny the allegations in paragraph 317 of the Amended Complaint.

319.    The Donovan Defendants deny the allegations in paragraph 318 of the Amended Complaint.

320.    The Donovan Defendants deny the allegations in paragraph 319 of the Amended Complaint.

321.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 320.

322.    The Donovan Defendants deny the allegations in paragraph 321 of the Amended Complaint.

323.    The Donovan Defendants deny the allegations in paragraph 322 of the Amended Complaint.

324.    The Donovan Defendants deny the allegations in paragraph 323 of the Amended Complaint.

325.    The Donovan Defendants deny the allegations in paragraph 324 of the Amended Complaint.

326.    Pursuant to Fed. R. Civ. P. 8(b)(6), the Donovan Defendants neither admit nor deny the amount of damages alleged in paragraph 325 of the Amended Complaint.   The Donovan Defendants deny all other allegations in paragraph 325 of the Amended Complaint.

327.    The Donovan Defendants deny the allegations in paragraph 326 of the Amended Complaint.

328.    The Donovan Defendants admit that Allstate asserts causes of action for common law fraud, conspiracy, and unjust enrichment under Texas common law.   The Donovan Defendants deny that they committed acts of fraud and conspiracy to commit fraud, and they deny that they wrongfully obtained a benefit through any act of fraud.

329.    The Donovan Defendants respond to the allegations in paragraph 328 in the same manner as they responded to the paragraphs that paragraph 328 seeks to incorporate by reference.

330.    The Donovan Defendants deny the allegations in paragraph 329 of the Amended Complaint.

331.    The Donovan Defendants deny the allegations in paragraph 330 of the Amended Complaint.

332.    The Donovan Defendants deny the allegations in paragraph 331 of the Amended Complaint.

333.    The Donovan Defendants admit the allegation in paragraph 332 of the Amended Complaint that the Donovan Defendants' records, reports, billings, and letters do not disclose any "relationships" between defendants, physicians, and/or the law firms or any purported "control" by Stern and/or Talamas of the Stang Firm.   The Donovan Defendants deny the

allegations in paragraph 332 that Northshore had a purported "relationship" with other defendants, physicians, and/or the law offices and deny that any "relationships" or "control" over the Stang Firm, as described in paragraph 332, are "material facts" and deny that the Donovan Defendants had any duty to disclose.     The Donovan Defendants are without sufficient knowledge or information to either admit or deny all other allegations in paragraph 332.

334.    The Donovan Defendants deny the allegations in paragraph 333 of the Amended Complaint.

335.    The Donovan Defendants deny the allegations in paragraph 334 of the Amended Complaint.

336.    The Donovan Defendants deny the allegations in paragraph 335 of the Amended Complaint.

337.    The Donovan Defendants respond to the allegations in paragraph 336 in the same manner as they responded to the paragraphs that paragraph 336 seeks to incorporate by reference.

338.    The Donovan Defendants deny the allegations in paragraph 337 of the Amended Complaint.

339.    The Donovan Defendants deny the allegations in paragraph 338 of the Amended Complaint.

340.    The Donovan Defendants deny the allegations in paragraph 339 of the Amended Complaint.

341.    The Donovan Defendants deny the allegations in paragraph 340 of the Amended Complaint.

342.    The Donovan Defendants deny the allegations in paragraph 341 of the Amended Complaint.

343.     The Donovan Defendants respond to the allegations in paragraph 342 in the same manner as they responded to the paragraphs that paragraph 342 seeks to incorporate by reference.

344.     The Donovan Defendants deny the allegations in paragraph 343 of the Amended Complaint.

345.     The Donovan Defendants admit the allegation in paragraph 344 of the Amended Complaint that defendants, except for defendants Talamas and Quality Drill Media, are healthcare providers.  The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegation in paragraph 344 that "Plaintiffs did not know at the time" that defendants Talamas and Quality Drill Media "were involved in the providers' operations." The Donovan Defendants deny all other allegations in paragraph 344 of the Amended Complaint.

346.     The Donovan Defendants deny the allegations in paragraph 345 of the Amended Complaint.

347.     The Donovan Defendants admit the allegation in paragraph 346 of the Amended Complaint that they received payment for services performed relating to the patients at issue. The Donovan Defendants deny all other allegations in paragraph 346 of the Amended Complaint.

348.     The Donovan Defendants deny the allegations in paragraph 347 of the Amended Complaint.

349.     The Donovan Defendants respond to the allegations in paragraph 348 in the same manner as they responded to the paragraphs that paragraph 348 seeks to incorporate by reference.

350.    The Donovan Defendants deny the allegations in paragraph 349 of the Amended Complaint.

351.    The Donovan Defendants are without sufficient knowledge or information to either admit or deny the allegations in paragraph 350 stating what plaintiffs seek to recover through this lawsuit and that "[t]he cases known to date are set forth in paragraphs 170 through 261 herein, and the attached Appendix A." The Donovan Defendants deny all other allegations in paragraph 350 of the Amended Complaint.

352.    Pursuant to Fed. R. Civ. P. 8(b)(6), the Donovan Defendants neither admit nor deny the amount of damages alleged in paragraph 351 of the Amended Complaint.  The Donovan Defendants deny all other allegations in paragraph 351 of the Amended Complaint.

353.    The Donovan Defendants deny the allegations in paragraph 352 of the Amended Complaint.

354.    Paragraph 353 of the Amended Complaint requires no response.

355.    The Donovan Defendants deny that, with respect to the Donovan Defendants, plaintiffs are entitled to any relief, as requested in the Prayer for Relief.

**AFFIRMATIVE DEFENSES**

356.    Limitations:  Allstate's claims are barred, in whole or in part, by applicable statutes of limitations.

357.    Laches:  Allstate's claims are barred, in whole or in part, by the doctrine of laches because Allstate unreasonably delayed and failed to exercise diligence in asserting its alleged rights and, as a result of the delay, the Donovan Defendants have made a good faith change of position to their detriment.

358.    Waiver:  Allstate's claims are barred, in whole or in part, because Allstate possessed actual and/or constructive knowledge of the purported facts upon which Allstate now

bases its claims, and Allstate voluntarily, knowingly, and intentionally abandoned and/or relinquished any and all claims that it now seeks to advance through this litigation.

359.    Ratification:  Allstate's claims are barred, in whole or in part, because Allstate possessed actual and/or constructive knowledge of the purported facts upon which Allstate now bases its claims, and Allstate ratified the propriety of the settlements and the underlying claims of the patients at issue, including the underlying medical expenses and recommended future medical expenses.

360.    Payment and Release:  Allstate's claims are barred, in whole or in part, because Allstate voluntarily tendered payment in full satisfaction and released all claims forming the bases of its claims asserted in this action.

361.    Allstate's Own Fault:  Allstate's claims are barred, in whole or in part, because Allstate's own acts and/or omissions caused or contributed to Allstate's injury.

362.     Responsible Third Parties:  Allstate's claims are barred, in whole or in part, because Allstate's damages, if any, were caused by acts and/or omissions of third parties.

363.    Indispensible Third Parties:  Allstate's claims are barred, in whole or in part, because Allstate has failed to join indispensible and necessary parties.

364.    Failure to Mitigate:  Allstate's claims are barred, in whole or in part, because Allstate failed to take steps necessary to mitigate its damages, if any, that it now seeks to recover through this litigation.

365.    Collateral Estoppel:  Allstate's claims are barred, in whole or in part, because Allstate is collaterally estopped from asserting that any acts, representations, and/or omissions of the Donovan Defendants formed the basis of any claim based on fraud or any other form of wrongdoing.

366.    Res Judicata and Claim and Issue Preclusion: Allstate's claims are barred, in whole or in part, based on the doctrines of *res judicata* and claim and issue preclusion.

367.    Equitable Estoppel:  Allstate's claims are barred, in whole or in part, based on principles of equitable estoppel.

368.    Unclean Hands.  Allstate's claims are barred, in whole or in part, because Allstate has engaged in wrongful conduct and activities, and it would be inequitable and unjust to allow Allstate to take anything from the Donovan Defendants based on any of Allstate's claims asserted in its Amended Complaint.

369.    Medical Necessity:  Allstate's claims are barred, in whole or in part, because any acts and/or representations of the Donovan Defendants on which Allstate's bases its claims were grounded on medical necessity.

370.    Lack of Privity:  Allstate's claims are barred, in whole or in part, by Allstate's lack of privity with the Donovan Defendants.

371.    Accord and Satisfaction:  Allstate's claims are barred, in whole or in part, by the doctrines of accord and satisfaction.

372.    Receipt of Benefit:  Allstate's claims are barred, in whole or in part, because Allstate received a substantial benefit from its settlement of the underlying claims on which Allstate bases its claims against the Donovan Defendants.

373.    Superseding Intervening Acts:  Allstate's claims are barred, in whole or in part, because of superseding intervening acts.

374.    Privilege:  Allstate's claims are barred, in whole or in part, based on privilege, including but not limited to the litigation privilege.

375.    Economic Loss Doctrine:  Allstate's claims are barred, in whole or in part, under the economic loss doctrine.

376.    Lack of Standing:  Allstate's claims are barred, in whole or in part, because if any claims exist, such claims belong to third parties and not to Allstate.

377.    Good Faith:  Allstate's claims are barred, in whole or in part, because the actions and representations at issue in the Amended Complaint were undertaken honestly, in good faith, and in a reasonable and medically appropriate manner.

378.    Substantial Compliance:  Allstate's claims are barred, in whole or in part, because the Donovan Defendants substantially complied with all applicable healthcare regulations and laws.

379.    Windfall:  Allstate's unjust enrichment claim is barred because allowing recovery on such claim would result in a windfall for Allstate.

380.    Absence of Actual or Justifiable Reliance:  Allstate's claims are barred because of Allstate's lack of actual or justifiable reliance.

381.    No Duty to Disclose:   Allstate's claims based failure to disclose are barred because no special or contractual relationship existed between Allstate and defendants that gave rise to any duty or obligation to disclose.

382.    No Common Purpose for Racketeering:   Allstate's RICO claims are barred, in whole or in part, because the defendants shared no common purpose for racketeering activity.

383.    No predicate Acts:   Allstate's RICO claims are barred, in whole or in part, because the defendants did not commit any predicate acts of mail fraud.

384.    No Common Scheme, Plan, or Motive:   Allstate's RICO claims are barred, in whole or in part, because the defendants did not engage in racketeering acts connected by a common scheme, plan, or motive.

385.     No Agreement to Participate: Allstate's RICO claims are barred, in whole or in part, because defendants did not agree to participate, directly or indirectly, in the affairs of the alleged enterprises through a pattern of racketeering activity.

386.     Ordinary and Customary Business:   Allstate's RICO claims are barred, in whole or in part, because the conduct of ordinary and customary business does not constitute a pattern of racketeering activity.

387.     Association does not Equal Enterprise:   Allstate's RICO claims are barred, in whole or in part, because defendants' purported association with other defendants does not rise to the level of an enterprise.

388.     Association does not Equal Conspiracy:   Allstate's RICO conspiracy claim is barred, in whole or in part, because defendants' purported   association with other defendants does not rise to the level of conspiracy.

## ORIGINAL COUNTERCLAIM:
##  ABUSE OF PROCESS

**Background and Facts Underlying Counterclaim**

389.     Dr. Donovan is an orthopedic surgeon, and Northshore is an association through which Dr. Donovan conducts his medical practice.  Dr. Donovan treats patients who sustain injuries from a variety of causes, including automobile accidents.  Dr. Donovan's patients are often involved in the pursuit of claims and legal actions seeking recovery of property damages, medical expenses, and lost wages incurred as a result of accidents.  In some cases, the patients' attorneys issue to Dr. Donovan and/or Northshore "letters of protection," which is a common practice that allows patients without financial resources or medical insurance to receive medical treatment while their cases are pending and assures those providing medical treatment that their financial interests will be "protected," should there be any net proceeds upon the settlement of

the patient's claim or a jury verdict in the patients' favor.  In connection with patients' claims and legal actions, patients often request and authorize Dr. Donovan and Northshore to provide to the patients' attorneys copies of medical records.  Pursuant to the Texas Medical Practices Act, Tex. Occ. Code Ann., Sections 159.005 and 159.006, Dr. Donovan and Northshore are required to provide these confidential records to the patients and their designees upon the patient's written consent for release of medical records, regardless of whether Dr. Donovan and Northshore are treating the consenting patient under a letter of protection.  From time to time, Dr. Donovan and Northshore are requested by *subpoenas duces tecum* issued by defense counsel to produce medical records and billings, and they have complied with these requests so long as the patient authorizes the release of the records. Dr. Donovan is also requested and/or subpoenaed from time to time to testify by deposition and/or at trial concerning his evaluation, treatment, and recommendations for future treatment of his patients who are pursuing legal action to recover for bodily injuries sustained in accidents, including but not limited to automobile accidents.

390.    Allstate is the largest publicly held personal lines insurer in the United States. Allstate was founded in 1931 as part of Sears, Roebuck and Co., and was spun off by Sears in 1993.  Among other types of insurance, Allstate provides automobile insurance coverage to its customers for medical payments, uninsured motorist benefits, underinsured motorist benefits, and payments for bodily injuries and property damage arising out of automobile accidents for which Allstate's insureds are deemed legally responsible.  Since 1950, Allstate has used its "you're in good hands" slogan and its cupped hands logo to persuade customers and potential customers alike that the insureds' best interest is Priority #1 with Allstate.

391.    In the early 1990's, Allstate made a leap in profitability after retaining New York consultant McKinsey & Company to assist in developing profit-boosting strategies for the insurance giant.  Based on McKinsey's recommendations, Allstate instituted a new claims

handling system called "Claims Core Process Redesign" (CCPR), which concentrated heavily on increasing Allstate's profitability in the private automobile policies market.[1]  McKinsey's CCPR system touted a two-phased claims handling strategy, described in McKinsey's presentation to Allstate's senior management as "Good Hands or Boxing Gloves."[2]  This strategy, recommended by McKinsey and implemented by Allstate, exploits the economic pressures placed on claimants, including insureds and those injured by insureds.  Phase one (the "good hands" phase) required Allstate to change how it evaluated and negotiated claims through the use of a computer program called "Colossus,"[3] which was calibrated to produce claims evaluations at least 20 percent lower on average than Allstate's pre-CCPR claim evaluations.  As part of the "good hands" phase, Allstate required its adjusters to make nonnegotiable, take-it-or-leave-it settlement offers based on artificially low settlement evaluations, to quickly settle and dispose of claims of those in dire financial straits and unwilling or unable to endure contentious litigation against the insurance Goliath.  McKinsey estimated that, when faced with the threat of delays in receiving payment on their claims, most claimants would accept low-ball offers and receive prompt payment – the "good hands" treatment.  In phase two (the "boxing gloves" phase), Allstate makes an aggressive assault on the few claimants who refuse to accept Allstate's low settlement offers, often compelling claimants to fight their claims through the judicial process.  This "fight to the mat" approach to addressing claims follows McKinsey's advice to Allstate that "aggressive litigation yields positive results."[4]

392.    Since Allstate first implemented McKinsey's recommendations nearly 20 years ago, Allstate has developed a sharply-honed system for carefully evaluating claims –

---

[1] Initial Presentation on "Claims Core Process Redesign" (McKinsey & Co. Sept. 28, 1992) ("McKinsey Slides").
[2] *Id.*, at 3172.
[3] In 2010, Allstate paid $10 million to settle a lawsuit brought by 41 states concerning the inconsistencies in the manner in which Colossus was used by Allstate.
[4] McKinsey Slides, at 4964.

successfully designed to reduced claims payouts and increase company profits.[5] Allstate utilizes Colossus and a medical bill review system to critically analyze and investigate the reasonableness and necessity of medical bills submitted and to identify possible fraudulent claims.  Allstate often refers claims to its "Special Investigation Units," or "SIUs," staffed with "fraud specialists who proactively flag suspicious activities, analyze questionable claims, and prevent fraudulent payouts."[6]

393.    Along with its "Good Hands or Boxing Gloves" strategy to minimize Allstate's exposure on claims while maximizing its profits for its shareholders, Allstate targets those, like Defendants in this lawsuit, who provide medical services to automobile injury claimants.  In state and federal courts throughout the United States, Allstate has initiated legal action against orthopedic surgeons, neurologists, radiologists, chiropractors and chiropractic clinics, imaging centers, pain management centers, and others who treat and provide medical services to injured patients asserting claims against Allstate automobile policies.  A "win" in these cases occurs as soon as the suit is filed, with the lawsuit having an immediate chilling effect on the medical provider's patient base and credibility as a treating physician for injured patients.  For those targeted medical provider defendants who are called to provide testimony in personal injury cases, they are beset with discovery requests and deposition questions targeted to discover the medical providers' business practices, associations with other medical providers and plaintiffs' counsel, revenues derived from and/or payments made to other targeted defendants having little, if anything, to do with the underlying personal injury claim.  Often, the targeted medical provider defendant is besieged with such discovery requests and questions from defense counsel not directly tied with Allstate, but the use of evidence gained from the targeted defendant in

---

[5] Since implementing "Good Hands or Boxing Gloves" and its CCPR system, Allstate's profits have increased *over 3,000%.  See,* Allstate's Annual Reports, 1996 – 2011.
[6] www.allstate.com/claims/fight-fraud.aspx

unrelated personal injury cases is potentially shared with Allstate and utilized by numerous counsel on the defense side of the bar.

394.    Allstate's lawsuits against physicians and other medical providers treating automobile injury patients rarely result in verdicts or judgments for Allstate.  However, the design of these lawsuits is accomplished long before trial or judgment.  In most cases, defendants faced with significant legal fees to defend against the insurance giants either face economic ruin or settle.

395.    This lawsuit is one more attempt by the insurance Goliath to damage and/or destroy a physician's medical practice that involves the treatment and evaluation of automobile accident victims whose claims affect Allstate's bottom line. While Allstate's claimed actual damages against Dr. Donovan and Northshore are minimal,[7] the real "damages" are incurred by defendants and recovered by Allstate when it files this suit and utilizes its unfounded and unproven claims as a vehicle for destroying defendants' professional reputation, credibility, and medical practice.

396.    Allstate has already "won" this suit by devastating Dr. Donovan's once-thriving practice and damaging his credibility as a treating physician testifying on his patient's behalf in personal injury litigation.  Since Allstate filed this suit in February 2012, Dr. Donovan's patient load has diminished significantly.  Since being sued by Allstate, Dr. Donovan has been asked to provide trial and/or deposition testimony in several cases involving injured patients' claims (none of which are patients at issue in this case), and defense counsel has elicited testimony from Dr. Donovan in each of these personal injury cases concerning this lawsuit and concerning

---

[7] Allstate claims that it is entitled to recover from defendants as actual damages "the amount by which the claims were inflated."  Amended Complaint, par. 350. The total amount of settlement monies expended by Allstate for payment of all 31 claims is $403,345.00.  *See*, *Id.*, Appendix of Claims.  The largest settlement payout was $30,000.00, with the smallest payout being less than $9,000.00.  *See, Id.*  Most of the settlement payments did not cover all of the patients' incurred medical bills and lost wages, much less future medicals.  The total amount of medical expenses for Dr. Donovan's treatment of the patients at issue, for which Allstate seeks recovery, is less than $21,000.00.  *See, Id.*

Allstate's unfounded and unproven allegations that Dr. Donovan and Northshore engaged in racketeering activities and fraud. Dr. Donovan and Northshore have been beleaguered with document requests in unrelated personal injury litigation targeted at eliciting evidence to support Allstate's claims, as well as other insurers' potential claims, and intended to destroy Dr. Donovan's credibility as a treating physician. Dr. Donovan's patients who seek recovery against insureds covered by Allstate and other insurers are also victims of Allstate's abuse of the legal process: they have been significantly prejudiced by the impeachment of their treating physician, whose only proven liability is that he has been sued by the insurance giant for alleged fraud and unlawful racketeering activities.

397.    Allstate's campaign to discredit Dr. Donovan's medical judgment and vilify Dr. Donovan for his treatment of personal injury plaintiffs began long before the filing of this lawsuit in early 2012. In 2010, Allstate's trial counsel, David Kassabian made appearances at the depositions of Dr. Donovan's patients and of Dr. Donovan, when testifying as a treating physician. Mr. Kassabian grilled the patients and Dr. Donovan about Dr. Donovan's relationship with the plaintiffs' counsel, Dr. Donovan's referrals to Memorial MRI for testing and pain management treatment, Dr. Donovan's purported business or financial connection with other treating physicians, and the means by which Dr. Donovan would be paid for his medical services.[8]

398.    Allstate's purported "concerns" with Dr. Donovan are by no means new revelations to Allstate. The claim files recently produced by Allstate to defendants confirm Allstate's alleged concerns with Dr. Donovan's patient evaluations. More often than not, Allstate discounted and/or ignored Dr. Donovan's recommendations for patient treatment when it processed and ultimately settled the claims at issue. As early as 2006, Allstate questioned the

---

[8] *E.g.,* Oral Deposition of Ericka Valladares, January 14, 2010; Oral Videotaped Deposition of William F. Donovan, M.D., September 12, 2011.

validity of Dr. Donovan's treatment, evaluation, and recommendation for further treatment for patients at issue in this case. Claims evaluation notes preceding settlement often indicated that the claimant was treated by a "plaintiff oriented provider" and questioned the necessity of testing and treatments recommended by Dr. Donovan.  Allstate "targeted" and flagged claims in which Dr. Donovan was a treating physician and, before agreeing to settle the claims, often referred the files to its SIU fraud investigation team.  These pre-settlement SIU investigation records often noted that "Dr. Donovan routinely recommends surgery for patients when it does not appear warranted"; that the file should be referred to the "pattern investigation"; and that a "spreadsheet" concerning Dr. Donovan should be saved to an undisclosed file entitled "MRI Project:  William Donovan."

399.    Despite having noted "concerns" with most of the claims of the patients at issue, particularly "concerns" regarding Dr. Donovan and his recommended testing and treatment, Allstate rarely put on its boxing gloves for the claims of the patients at issue in this case.  Allstate settled 24 of the 31 claims at issue within four months after receiving the initial demand letter from the patients' attorneys.[9] Generally, these "good hands" claims settlements were negotiated by Allstate with no acceptance or consideration of any recommended future medical expenses. In many cases, Allstate noted in its pre-settlement notes that it believed that Dr. Donovan's diagnosis "inflated the general damages." Despite Allstate's thorough evaluation of these claims, noted patient treatment by a purportedly "patient oriented provider," and expressed "concerns" with tests and treatments recommended by Dr. Donovan, it just made good business sense, in keeping with McKinsey's recommendations, to settle these 24 claims quickly and move on.

400.    Of the seven claims at issue that were not settled within 4 months, Allstate entered into "phase two" and took out the boxing gloves. Allstate delayed processing patients'

---

[9] At least nine of the claims of the patients at issue were settled by Allstate within one month of receipt of the attorneys' demand package.

claims after the claimants refused Allstate's low-ball offers that did not begin to cover the injured claimants' incurred medical expenses, much less needed future treatments and lost wages. Often, Allstate's Colossus computer-generated claims evaluation system downgraded the value of claims arbitrarily and without logical explanation. Before final settlement, the "boxing gloves" claims at issue were dragged out for months and sometimes years, all claims files noting "concerns" with Dr. Donovan's evaluation and treatment and recommendations regarding future treatment. All of the "boxing gloves" claims at issue clearly demonstrate that Allstate undertook thorough investigations after considering numerous factors, including its "concerns" with Dr. Donovan and his evaluations and recommendations for treatment. Nonetheless, Allstate eventually settled every claim at issue. In fact, one Allstate SIU investigator summed it up well, after concluding his investigation before settlement: "the overall risk has been taken into consideration with this decision."

401.    Allstate's claims files for the patients at issue clearly demonstrate that Allstate cannot prove up all required elements for fraud, that Allstate's counsel knew Allstate cannot prove up all the required elements of fraud, and that Allstate cannot ultimately recover on any claim asserted in this lawsuit. *See, Allstate Ins. C. v. Receivable Finance Co. LLC*, 501 F.3d 398 (5th Cir. 2007). *See also*, Docket No. 53, page 10. But, no matter to Allstate: Allstate's ulterior motive – to destroy Dr. Donovan's reputation, credibility, and medical practice treating people with traumatic injuries – was accomplished by the very filing of this suit, notwithstanding clear violations of Fed. R. Civ. P. 11(b) by Allstate and its counsel.

**Count I:      Abuse of Process**

402.    Under Texas law, "[a]buse of process is the malicious use or misapplication of process in order to accomplish an ulterior purpose." *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. App. – Houston [14th Dist.] 2001, no pet.). "[T]he process must have been used to

accomplish an end which is beyond the purview of the process and compels a party to do a collateral thing which he could not be compelled to do."  *Bossin v. Towber*, 894 S.W.2d 25, 33 (Tex. App. – Houston [14th Dist.] 1994, no pet.).

403.    Allstate filed this suit with purposes other than to resolve the alleged legal dispute with Dr. Donovan and Northshore that it articulates in its Amended Complaint. Allstate filed this lawsuit to coerce unreasonably low settlement of future personal injury claims by attacking the character, credibility, and medical judgment of personal injury plaintiffs' treating physicians; to force Dr. Donovan to cease the evaluation and treatment of patients injured as a result of automobile accidents; to interfere with Dr. Donovan's and Northshore's contractual and doctor/patient relationships with existing patients who were injured by Allstate's insureds and are currently pursuing property damage and bodily injury claims against Allstate's insureds; to interfere with the Donovan Defendants' prospective contractual relationships and doctor/patient relationships with persons who were or will be in the future injured and intend to assert a claim against a responsible third party; to recover funds for cases that Allstate previously settled at fair value; and to extract evidence that Allstate can use to impeach Dr. Donovan when testifying on behalf of his patients in personal injury lawsuits against Allstate's insureds.

404.    As a result of Allstate's abuse of process, Dr. Donovan and Northshore have suffered and will continue to suffer significant financial injury through the loss of patients and the damage of Dr. Donovan's reputation, credibility, and livelihood.  Moreover, Dr. Donovan and Northshore have incurred and will continue to incur significant legal expenses to defend this suit (with legal fees likely to exceed the total actual damages sought by Allstate).  Dr. Donovan has also sustained and will continue to sustain legal fees for legal representation during his depositions in personal injury cases brought by his

patients, to defend against the barrage of questions and document requests from defense counsel representing Allstate and other insurers concerning the unfounded and unproven claims asserted by Allstate in this lawsuit.

405.   Because of Allstate's abuse of process, the Donovan Defendants are also entitled to and seek recovery of exemplary damages, prejudgment and postjudgment interest, and costs of court.

**Request for Relief**

WHEREFORE, Dr. Donovan and Northshore respectfully request that the Court enter judgment in their favor on all claims asserted by Allstate in its Amended Complaint; that Dr. Donovan and Northshore recover from Allstate the actual and exemplary damages requested in its Counterclaim, in addition to pre-judgment and post judgment interest as provided by law and all costs of court; and that the Court grant Dr. Donovan and Northshore such other relief to which they may be entitled.

Respectfully submitted,

THE LAW OFFICES OF DAVID B. HARBERG

By:      /s/ David B. Harberg
David B. Harberg
State Bar No. 08942450
1010 Lamar, Suite 450
Houston, Texas  77002
Telephone:  713-752-2200
Facsimile:    832-553-7888

***Attorneys for Defendants William F. Donovan, M.D. and Northshore Orthopedics Assoc.***

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on this 27th day of August, 2012.


_____/s/ David B. Harberg_____